GORDON P. HENDERSON, Respondent, v. HEMAN CONSTRUCTION COMPANY, a Corporation, Appellant.

St. Louis Court of Appeals. Argued and Submitted December 3, 1917. Opinion Filed January 8, 1918.

1. **MASTER AND SERVANT:** Injuries to Servant: Dangerous Machinery: Evidence: Question for Jury. Evidence in an action for damages for personal injuries to plaintiff while working at a saw for defendant, examined, and *held* sufficient to take the case to the jury.

2. ———: ———: Witnesses: Cross-Examination: Evidence: Competency. In a personal injury case, plaintiff's witness, a deputy state factory inspector, testified that there were well-known safety appliances on the market with which the saw that caused plaintiff's injuries could have been guarded. The witness, on cross-examination, to show that he did not consider the saw, which was temporarily located, a manufacturing "establishment" requiring inspection, was asked why he had not inspected it. *Held*, that objection to the question was properly sustained.

3. ———: ———: Instructions: Best Appliances "Possible." An instruction telling the jury that if they found that a saw was so placed that it was dangerous to plaintiff while engaged in his ordinary duty as employed sawyer thereabout, or that at the time and prior to plaintiff's injury, if any, "it was possible for defendant to have safely and securely guarded said saw, but that defendant had failed and neglected to thus guard said saw," sufficiently meets the requirements of the statute, and to tell the jury that it must be so guarded as not to interfer with its operation was not necessary; the word "possible," as used, putting this issue before the jury.

4. **TRIAL PRACTICE:** Instructions: Assumption of Facts: Request. An instruction that if the jury found that while engaged in the duties of his employment working the saw, cutting pieces of lumber "which plaintiff was required to hold in position with his hands," etc., given under the general direction that if the jury found so ·and so to be the fact, does not assume that he had a right to hold in position with his hands the lumber he was sawing, and if certain elements were omitted, it was mere non-direction, and defendant cannot complain, inasmuch as no request was made for instructions covering such elements.

5. **NEGLIGENCE:** Instructions: Measure of Damages. An instruction in the usual form on the measure of damages for personal injuries, *held* not bad for failure to exclude any injuries caused by plaintiff's negligence.

6. ———: ———: Assumption of Facts: **Ordinary Care.** An instruction given at the instance of plaintiff in an action for personal injuries correctly defining ordinary care, and then charging that the omission of such care is negligence, etc., is not subject to the criticism that it is a mere abstract statement of law, leaving the jury to draw their own conclusions as to what degree of care defendant was bound to exercise, nor that it assumes the defendant was negligent.

7. **TRIAL PRACTICE:** Instructions: Refusal. The refusal of requested instructions covered by those given is not error.

8.· **MASTER AND SERVANT:** Injuries to Servant: Statutes: Construction. Rev. St. of Mo. 1909, Sec. 7828, providing that machinery, etc., in manufacturing, mechanical, and other establishments, when so placed as to be dangerous to persons employed therein or thereabout, shall be safely guarded when possible, applies to a power-driven saw not in a building but temporarily placed and used in cutting lumber, since it is machinery used in a manufacturing and mechanical enterprise, comes within the meaning of the word "establishment," and whether it be permanently or temporarily placed is immaterial.

9. **DAMAGES:** Personal Injuries: Excessive Damages. A judgment for $3500, considering the injury to plaintiff, he being permanently deprived of the use of his thumb and first finger, is not excessive, and the fact that he was intending to take up professional or skilled work rather than purely mechanical work did not make it excessive.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Leo S. Rassieur,* Judge.

AFFIRMED.

*Rodgers & Koerner* for appellant.

(1) Section 7828, R. S. 1909, is in derogation of the common law, and, hence, should not be extended to cover either places or devices not clearly within the express terms. Simpson v. Iron Co., 249 Mo. 400; Phillips v. Shoe Co., 178 Mo. App. 196. (2) Defendant's peremptory instruction should have been given. Plaintiff's case does not come within the statute (Sec. 7828), because the saw by which he was injured was not in a "manufacturing," "mechanical" or other "establishment." Chapter 67, Arts. 5 and 6, R. S. 1909; Ward v. City of Norton, 86 Kans. 906; 3 Century Dictionary, page 2009; 3 Oxford Dictionary, page 298; Webster's Dictionary, page 751. In the construction of statutes two rules must be observed: (a) The language employed should be given its ordinarily accepted meaning. R. S. 1909, sec. 8057; State ex rel. v. Gordon, 266 Mo. 394, 411. (b) The language employed should be construed with regard to the context and in connection with all other statutes that are *in pari materia*. State ex rel. v. Forest, 177 Mo. App. 245; In re Ryan's Estate, 174 Mo. App. 202. (3) Instruction Number 1, given for plaintiff, is bad for the following reasons: (a) It assumes to enumerate the facts which, if found, entitle plaintiff to a verdict, but does not contain in its hypothesis all of the facts essential to the cause of action. Miller v. Telephone Co., 141 Mo. App. 462, 475; Enloe v. Am. Car & Foundry Co., 240 Mo. 443; Grier v. Railroad, 173 Mo. App. 276. An essential element of plaintiff's case was that the saw could be guarded without impairing its efficiency. Phillips v. Hamilton-Brown Shoe Co., 178 Mo. App. 196, 213-214; Cole v. Lead Co., 240 Mo. 397, 408; Daniels v. Goepe, 191 Mo. App. 1, 12. (b) It assumes as true a fact about which there is a controversy. Clark v. Railroad, 242 Mo. 570; Moon v. Transit Co., 247 Mo. 227. (c) It uses words of uncertain meaning without definition. Strother v. Street Ry., 183 S. W. 657; Beggs v. Shelton, 173 Mo. App. 127. (d) It places upon defendant the absolute duty to guard this machine, whereas this duty was subject to important

qualifications. Phillips v. Shoe Co., 178 Mo. App. 196; Saling v. American Chicle Co., 177 Mo. App. 374; Strode v. Box Co., 124 Mo. App. 511; Colliott v. Mfg. Co., 71 Mo. App. 170; Meiffert v. Sand Co., 124 Mo. App. 491. (4) Plaintiff's instruction Number 2 is bad: (a) It permits the jury in determining plaintiff's damages to consider impaired earning capacity, of which there is no evidence. Rosenkranz v. Railroad, 108 Mo. 9, 16. (b) It does not limit the jury to such damages as they may find were caused plaintiff by defendant's negligence in the manner set forth in the petition. Menhardt v. Ice, etc., Co., 163 Mo. App. 278; Davis v. Street Rys., 188 Mo. App. 128, 143. (5) Plaintiff's instruction Number 3 is bad: (a) It assumes as fact that defendant failed to safely and securely guard the saw referred to in the evidence. (b) It uses the word "negligence" without definition. Kieselhorst Piano Co. v. Porter, 185 Mo. App. 684; Raybourn v. Phillips, 160 Mo. App. 534, 541, and cases there cited. (6) Defendant should have been permitted to show that the deputy factory inspector did not consider defendant's collection of implements to be an "establishment," and therefore made no inspection thereof. Westermann v. Supreme Lodge, 196 Mo. 709; State ex rel. v. Job, 205 Mo. 29. (7) The verdict is excessive. Sanders v. Lumber Co., 187 Mo. App. 414, et seq. Rittel v. Southern Iron Co., 127 Mo. App. 463, 468; Parker v. Railroad, 164 Mo. App. 31; Huston v. Railroad, 151 Mo. App. 335.

*G. A. Orth, Joseph A. Wright* and *Watts, Gentry & Lee* for respondent.

(1) The statute is not to be strictly construed but, being highly remedial in character, it should be liberally construed. Austin v. Shoe Co., 176 Mo. App. 546. It has been expressly applied to a saw. Holt v. Shoe Co., 186 Mo. App. 90; Hughes v. Marshall Contracting Co., 176 S. W. 534. (2) The place where defendant was carrying on its work was an "establishment" within the meaning of the statute. Casper v. Lewis, 82 Kan. 604; Bogard v. Tyler's Admr., 119 Ky. 637, 640; Ohio, etc.,

Ry. Co. v. Cavanaugh, 35 Ind. App. 32; Buchanan v. Blair, 90 Kan. 42; Murphy v. Bennett, 11 App. Div. 298. (3) Plaintiff's Instruction No. 1 correctly stated the law. Schultz v. Moon, 33 Mo. App. 34; LeMay v. Railroad, 105 Mo. 361; Browning v. Railroad, 124 Mo. 55, 71-72; Wilson v. Railroad, 160 Mo. App. 649, 667-668; Wheeler v. Bowles, 163 Mo. 398; Smith v. Fordyce, 190 Mo. 1, 31-32; Gamache v. Johnson Tinfoil & Metal Co., 116 Mo. App. 596; The State to use v. Donnelly, 9 Mo. App. 519. This is true, even as to indictments: State v. Maclay, 180 Mo. App. 727; State v. Hilton, 248 Mo. 530; State v. Becker, 248 Mo. 555. (a) The instruction does not assume any fact about which there is a controversy. (b) The word "establishment," used in the instruction, is not a word of uncertain meaning. It is a word of everyday use. It was not error to fail to define such a commonplace word. Anderson v. Sash & Door Co., 182 S. W. 819; Richmond v. U. Rys. Co., 176 Mo. App. 330; Mather v. Railroad, 166 Mo. App. 142, 148-149; Sweeney v. Railroad, 150 Mo. 385; Morris v. Railroad, 184 Mo. App. 65; Gillogey v. Railroad, 187 Mo. App. 551; Bettoki v. Mining Co., 180 S. W. 1021; Sanders v. Quercus Lbr. Co., 187 Mo. App. 408; Casey v. Barber Asphalt Pav. Co., 202 Fed. 1. (c) If defendant desired any definition of the word "establishment," it should have submitted an instruction defining it. (d) The defendant framed its instructions on the same theory as that of plaintiff; therefore, it cannot now complain of plaintiff's instruction. Wilson v. Railroad, 160 Mo. App. 649, 665. (4) Plaintiff's Instruction No. 2 correctly declared the law. Rittel v. Souther Iron Co., 127 Mo. App. 463, 467. (5) There was no error in sustaining plaintiff's objection to defendant's offer to show by the factory inspector what he thought the law meant. Howell v. Sherwood, 242 Mo. 513; Williams v. City of St. Joseph, 243 Mo. 224; Whiteaker v. Railroad, 252 Mo. 438. To allow a witness to express an opinion of what the law means would be improper. Ellis v. Brand, 176 Mo. App. 390-391; Watkins, etc., Co. v. Holloway, 181 S. W. 603; Iowa Portland Cement Co.

v. Lamandola, 227 Fed. 823, 827. (6) The verdict of the jury was not excessive in the first instance, and since the trial court required a remittitur of $1000, the amount of the judgment as it now stands is extremely moderate. Saller v. Friedman Bros. Shoe Co., 130 Mo. App. 712. The whole of Henderson's thumb and the whole of his index finger on his left hand were lost, which was a much more serious loss than the loss of index finger and half of one joint of thumb, as in the case of Rittel v. Souther Iron Co., 127 Mo. App. 463, 466.

REYNOLDS, P. J.—Plaintiff, then a young man about twenty years of age, attaining his majority December 24, 1914, was a student in the agricultural department of the State University located at Columbia, Missouri, specializing in the marketing of rural products. In the summer of 1914, and during the vacation of the college, he went to work with defendant, engaged in constructing a concrete viaduct at the intersection of Jefferson and Chouteau Avenues, in the city of St. Louis, across the tracks of several railways. He was put to work assisting in the sawing of lumber, that being done by a circular or ripsaw. Plaintiff's particular work at first was to put the lumber on rollers that ran up to the saw and take it off after the saw had passed through it. He had had no previous experience in this work and after doing this work for two weeks under the direction of a foreman, was put to running the saw by the carpenter foreman of defendant. Before putting him at this work the foreman asked him if he knew how to run the saw. Plaintiff said, "Yes." Whereupon the foreman told him that he was to run it. Defendant, in connection with its work of constructing the viaduct, was engaged in sawing lumber of all kinds, ripping pieces, sawing wedges, and the like. The saw was set on a table, a frame with an iron top and a slit in it for the saw to run in. There was a motor supplying the power and a belt connected with a shaft, which ran underneath the table, the saw being on a shaft running through a slit in the table. The platform of

this table was about waist high, about five feet long and three feet wide. The saw being operated at the time was a fourteen-inch saw and was set lengthwise of the table. Over the saw was an iron hood, about an inch wide, set over the top, and a thin "splitter," as it is called, which was a piece of steel the thickness of the saw and let down into the groove made by the saw as it cut through the board. The end of the guard or hood over the top of the saw was about five and a quarter inches from the top of the table at the end towards the operator, said the plaintiff, this hood remaining in the same position while the saw was moving, but it could be raised or lowered upon occasion when it was necessary to put in a larger saw or thicker board. It was held in place by means of a thumbscrew set under the table, and could be raised or lowered above the top of the table. The accident to plaintiff occurred about half past nine o'clock on the morning of August 13, 1914. Plaintiff was sawing wedges out of a yellow pine board about eighteen inches long which another employee had brought him. The board had been marked off for three wedges and he was sawing them out. These wedges were to be used in bracing a gravel bin of the defendant. Plaintiff had sawed out one of the wedges and started to saw out another. The board was resting on the table through which the saw ran, and plaintiff was pushing it in towards the saw with his left hand and holding it down with his right hand. He had sawed half way the length of this second wedge when the board split or the saw struck a rotten place and jumped, jerking his hand into the saw and cutting his thumb and first finger so that it was necessary to amputate them down to the first joints, the saw having cut though the first and second joints and the ends hanging by flesh or skin. The wound did not heal until the middle of October. Since the accident the fingers of the hand are very sensitive and if plaintiff happens to strike them against anything it is very painful. While working for defendant plaintiff received $2 a day. After being injured he

went home and then to a hospital and did not work any more that summer; was at the hospital five days.

The defendant had hoisting engines and concrete mixers in the vicinity of the saw at the time of this accident and an office building, these being used in carrying on the work of constructing the viaduct. There was no machinery in the office and neither the saw nor any of the other appliances were in any building or enclosure. The saw by which plaintiff was injured was out in the open—no roof over it. It was what is called a portable saw; could be moved and was moved from place to place as the work required, and no building or enclosure over the machinery except that there was a roof over a hoisting machine—a temporary shelter. One of the concrete mixers was moved as occasion required. All the machinery was there temporarily and for the purpose of doing that particular work and then moved away.

On cross-examination plaintiff said that he worked for defendant from July 16th until the first of August and had seen the operation of this saw every day; saw how lumber was put through there; knew that the guard over the saw could be lowered or raised by using the thumbscrew on the under side of the table, and knew that the slot was there for the purpose of raising and lowering that guard; sometimes used the twelve inch saw and sometimes a fourteen-inch, replacing one for the other as occasion required, and when doing that, raising or lowering the guard; had seen this done but had never done it himself. The purpose of moving the splitter was for so adjusting it as to try and cover the front of the saw so that the teeth of the saw would not cut on the inside of the guard and get hot. He understood the operation of the machinery about the saw and understood how to start and stop the saw and had never made any complaint about the guard. On the occasion of the accident plaintiff pushed with his right hand and held the board down with his left, he repeated. This was to bring the board in contact with the teeth of the saw, holding the board on the table

with his left hand, holding it down to keep it from flying off the table or from vibration, and he repeated that on the occasion of the accident he was holding the board down with his right hand and pushing with his left; that he was pushing the board and it was half way through when the board jumped forward; had his thumb on the west end of the board pushing on that end; his index finger next to it. (It appears that there was a model or diagram identified as showing the board as marked and as being sawed, which was before the jury for their inspection, and plaintiff testified, illustrating from that diagram or model. Photographs were also used at the trial.) When the board jumped, the distance between the little finger of his left hand and the saw, plaintiff thought, was eight or ten inches. His thumb and index finger were closer. No other parts of his hand, except his thumb and first finger, were hurt.

A witness for the plaintiff, who was a deputy state factory inspector, shown photographs of the saw, was asked if there was in use and on the market any sort of safety appliance in the way of a guard that could have been put over that table so as to guard the saw without interfering with the work and so as to cover the entire surface of the saw and protect the hand of the operator. This was objected to by counsel for defendant and the objection overruled, exception saved and witness answered that there was, and described the kind of guards that were in use for that surpose and had been extensively advertised and were generally known. These guards are made so that they will fit over the saw, are made of steel and witness described them. They can be used on a portable saw, such as the one in question, and he testified that they can be readily adjusted so as not to interfere with the work of the saw. (It was not claimed that any such guards were in use on the saw, the only guard being the hood we have referred to.)

On cross-examination counsel for defendant asked this witness why he had not gone to the place where defendant was operating and make an inspection. This was objected to and the objection sustained.

This was practically the testimony for plaintiff.

Averring the fact of the injury, the petition charges that the saw as placed and in operation was dangerous to plaintiff and that it was possible for defendant to have safely and securely guarded it, and that the failure of the defendant company to install and maintain a proper guard for the saw was in direct contravention of the provisions of section 7828, Revised Statutes 1909, setting out that section, and that while he was operating the saw his left hand was thrust into and upon the same and came in contact with it and the thumb and index finger so cut, mangled and mutilated as to necessitate their amputation, and that plaintiff's hand was thrust into and came in contact with the saw by reason of the carelessness and negligence of the defendant in failing to guard the saw as required by that section of the statute. Averring that his injuries were serious and permanent he prayed judgment for $4500.

Defendant introduced evidence seeking to prove the averments of its answer, which, after a general denial, pleads contributory negligence and also avers "that at all the times mentioned in plaintiff's second amended petition filed herein, defendant provided and equipped the circular or ripsaw described in said petition with a safe, suitable and adequate guard, which said guard could at all said times be raised and lowered by plaintiff, according to the thickness of the material being sawed by plaintiff and so that said material could be sawed and at the same time afford protection to plaintiff from coming in contact with said saw," and charges that plaintiff had negligently failed to avail himself of the guard and carelessly allowed and permitted his thumb and the index finger of his left hand to come in contact with and against the saw and that these acts of negligence on the part of plaintiff directly contributed to cause whatever injuries, if any, were sustained by him on the occasion.

To this plaintiff replied, and on trial before the court and jury, a verdict was returned in favor of

plaintiff in the sum of $4500. Defendant, filing a motion for new trial and in arrest of judgment, the court announced that it would sustain the motion for new trial unless plaintiff remitted $1000 from the verdict. A remittitur was entered, the motions for new trial and in arrest overruled, and judgment rendered in favor of plaintiff in the sum of $3500, from which defendant duly perfected its appeal.

There are just two material questions involved in this case. First, was this machinery, more particularly the saw, situated as it was, machinery which came under the provisions of section 7828? Second, assuming that it did come under the provisions of that section, was it properly guarded? Other minor points are made which we will notice briefly.

Learned counsel for appellant make a number of assignments of error, claiming error in refusing to take the case from the jury at the close of plaintiff's evidence and again at the close of the whole case; error in excluding testimony sought to be brought out from the deputy factory inspector referred to; error in giving certain instructions to the jury at the instance of plaintiff and in refusing to give certain instructions asked by the defendant; error in overruling the motion for new trial and in failing to require plaintiff to remit a larger sum than $1000.

Disposing of these assignments, we do not find any of them tenable.

Reading the evidence introduced in behalf of plaintiff, we hold that it was sufficient to take the case to the jury.

We find no error in declining to allow the deputy factory inspector to state why he had not made an inspection of the machinery in operation by the defendant and used in the construction of the viaduct. The object stated by learned counsel for appellant in asking this question was a desire to show that this was not a manufacturing establishment and that the witness, as a deputy

factory inspector for the State, did not consider it a manufacturing establishment and knew that it was not a manufacturing establishment and for that reason did not go there. It is true that it is a recognized rule of interpretation of statutes that where they have been interpreted by the executive officers, whose duty it is to enforce them and their construction has been acted upon for any considerable time, due regard should be paid to such construction. That is the rule announced in Endlich on Interpretation of Statutes, sec. 83, and quoted approvingly by our Supreme Court in Westerman v. Supreme Lodge Knights of Pythias, 196 Mo. 670, l. c. 709, 94 S. W. 470. That same rule has been announced by our Supreme Court in Ross v. Kansas City, St. J. & C. B. Ry. Co., 111 Mo. 18, l. c. 25, 19 S. W. 541. But that is very far from sustaining the proposition made by learned counsel for appellant that is was competent for this deputy state factory inspector to testify as to why he had not inspected this particular machinery because he thought it did not fall within the duties of his office as being machinery which he was required to inspect. That testimony was properly excluded.

It is complained of the first instruction given at the instance of plaintiff that it omits reference to necessary facts to entitle plaintiff to recover. We do not think that this instruction omits reference to any element essential to plaintiff's right of recovery. It followed the language of the statute, but does omit to reckon with the construction placed on the statute by our courts, namely, that the machinery should be safely and securely guarded when possible "without seriously impairing its efficiency." We do not find this objection tenable. This instruction distinctly told the jury that if they found from the evidence "that said saw was so placed that it was then and there dangerous to plaintiff while he was engaged in his ordinary duties as such employee, and while he was working as a sawyer thereabout, and that on said day and at the time of and prior to plaintiff's receiving his injury, if any, it was possible for

defendant to have safely and securely guarded said saw, but that defendant had failed and neglected to thus guard said saw,'' etc. We think this sufficiently meets the requirements of the statute and it was not necessary for the court to tell the jury that it must be so guarded as not to interfere with its operation. The word ''possible,'' as used in this instruction was all that was required to put this issue properly before the jury.

Another error assigned against this instruction is that it assumes as a fact that plaintiff was required to hold in position with his hands the lumber he was sawing. We do not understand the instruction to carry any such inference. In that part of it so criticized the jury is told that if it is found that while plaintiff was engaged in the duties of his employment in his customary working place in the establishment and was working at the saw and cutting pieces of lumber ''which plaintiff was required to hold in position with his hands, a piece of wood which he was then and there sawing suddenly and violently plunged forward and thereby plaintiff's left hand was caused to come in contact with said saw and his thumb and index finger of his left hand were caught in said saw and mutilated so that it was necessary to amputate the same,'' etc. All this was under the general direction that if the jury found so and so to be the fact, and is very far from assuming that he had a right to hold his hands in that position. It is very correctly argued that the statute is not intended to make the employer an insurer, and that the duty to guard attaches only when the normal operation of the machine threatens injury to the employee. All of these elements, it is claimed, are omitted from this instruction. If so, failure to so instruct was mere non-direction, and we find no request for any such instruction. Briefly, we find no error in this first instruction.

Instruction No. 2 is on the measure of damages and is criticized for failure to exclude any injuries caused by plaintiff's negligence. We do not think that was necessary. The instruction is in the form generally adopted as the correct basis for damages in like cases.

Instruction No. 3, given at the instance of plaintiff, is said to be subject to serious criticism in that it is a mere abstract statement of law, leaving the jury to draw their own conclusion as to what degree of care defendant was bound to exercise. It is further objected to as not defining negligence and that it assumes as a fact that defendant failed to safely and securely guard the saw, the latter a very much controverted issue, defendant contending that the latter was sufficiently guarded under the circumstances. In an instruction which the court gave at the instance of plaintiff the court defined ordinary care correctly and then charged that the omission of such care is negligence in the sense in which that word is used in the instructions. We see no error in this third instruction.

Nor do we find any error in the court's action in refusing instructions asked by defendant. They were either covered by instructions given or did not properly present the issues to the jury.

The most serious contention, however, is that this saw, as placed and used, was not within the terms of section 7828. It is true that it was not in a building, but as we have said in Austin v. Bluff City Shoe Co., 176 Mo. App. 546, 158 S. W. 709, and as has been held in many cases following that and in the cases there referred to as decided by our Supreme Court, the statute is highly remedial, and although it changes the common law, it is to be liberally construed in favor of the safety of the life and limbs of employees. That was the object had in view. When our statute provides, as it does, that "The belting, shafting, machines, machinery, gearing and drums, in all manufacturing, mechanical and other establishments in this State, when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties, shall be safely and securely guarded when possible," as we view it, it covers all such appliances used in and about all manufacturing, mechanical and other establishments. This defendant was undoubtedly engaged in a branch of manufacturing or mechanical work and its appliances used

were as much included within this law as if they had been housed and covered up and all under roof. It was engaged in a manufacturing and mechanical enterprise requiring the use of machinery. While its working plant was not under cover or in a building, its plant, as located and used, was "established," whether temporarily or permanently is immaterial, at a certain place to carry on certain work, in the doing of which machinery was used, and all of the machinery so used was of the "establishment." That being so, it was within the law. Hence defendant owed the duty to its employees to safely and securely guard all these appliances when possible, or if not possible to so guard them then to give notice of its danger by posting a warning in the establishment. There is no pretense that the latter was done. By its answer in this case, the part germane to this being quoted by us above, defendant pleaded that this particular machine, this saw, was properly guarded. In point of fact its whole defense was directed to the proposition of attempting to prove that it had properly guarded this saw. No such plea was proper save in a case within the statute. The proposition submitted to the jury was as to whether this saw could have been and was properly guarded, and the jury found against defendant on the evidence. We are not disposed to disturb that verdict.

The amount of the verdict, even as reduced, is attacked as excessive. We are unable to agree to this.

In the first place, that was a matter so largely in the discretion of the trial court, and which it exercised in reducing the amount found by the jury and requiring a remittitur of $1000 of the $4500, which the jury returned, that we do not feel warranted in interfering. Nor, in the next place, are we prepared to say that the amount finally allowed to stand as a verdict, $3500, considering the injury to plaintiff, he being permanently deprived of the use of his thumb and first finger, is excessive. Learned counsel for the defendant claim that plaintiff's testimony showed that he did not intend engaging in any purely mechanical work where the use of his thumb and first finger on his left hand would be necessary but that

he was in what might be called professional or skilled work. Who can say that the plaintiff, a young man just entering on his majority, would, through the course of his natural life, at no time be put into such circumstances as to render it necessary for him to resort to manual work of some kind. No matter what his expectations as to his future career may be, whether manual or professional, he is entitled to the use of all of his members with which he was endowed, and deprivation of the use of two such important ones as here appears, surely goes to the impairment of his efficiency, comfort and enjoyment of life.

We find no reversible error to the prejudice of defendant.

The judgment of the circuit court is affirmed. *Allen* and *Becker, JJ.,* concur.