THE STATE ex rel. FRANK ADAM ELECTRIC COMPANY v. WILLIAM H. ALLEN et al., Judges of St. Louis Court of Appeals.

In Banc, May 22, 1923.

1. **CERTIORARI: Conflict in Opinions: Jurisdiction.** A mere erroneous construction of a statute by a court of appeals, which does not conflict with any previous decision of this court, does not give this court jurisdiction to review its opinion by writ of *certiorari*.

2. ———: ———: **Dangerous Machinery in a Store: Ejusdem Generis.** Defendant conducted a store, in which were arranged in rows on the floor electrical stoves and electrical washing machines, between which was a narrow aisle wide enough for a person to walk through; plaintiff was employed therein as a clerk and demonstrator, and when a customer came in she arose and stood near an electrically operated washing machine, and as she did so

some one passed her in the narrow aisle and her hand caught in the rubber rollers of the wringer attached to the machine. Defendant contended that the words "and other establishments" used in the statute (Sec. 6786, R. S. 1919) requiring dangerous machinery "in all manufacturing, mechanical and other establishments" to be safely guarded, did not embrace a store, and that the rule of *ejusdem generis* applies and only establishments of the same general character as those enumerated are embraced therein. The Court of Appeals held that the rule does not apply, and that these words, when read in connection with those of the preceding section declaring that all accidents in "manufacturing, mechanical, mercantile and other establishments" shall be inspected, did apply to an electrical store or a "mercantile" establishment and made the proprietor of such a store liable in damages for injuries to his employees therein while performing their ordinary duties caused by machinery operated by electricity, unless safely guarded. *Held*, that this court has never held that the rule of *ejusdem generis* did or did not apply in the construction of said statute, and has never decided a case of similar or the same facts, and that the decision of the Court of Appeals pertains only to the construction of said statute, and whether said construction be right or wrong, this court has no jurisdiction to review it by writ of *certiorari*.

## Certiorari.

Writ quashed.

*Jones, Hocker, Sullivan & Angert* for relator.

(1) The rule of *ejusdem generis* has been uniformly applied by the Supreme Court in the construction of statutes, and the general words in Sec. 6786, R. S. 1919, should not be construed as extending the language to include "mercantile" establishments. State v. Richard Wade, 267 Mo. 257; Regan v. Ensley, 283 Mo. 307; State ex rel. v. Wurdeman, 227 S. W. 67; City of St. Louis v. Laughlin, 49 Mo. 559; State v. Dinnisse, 109 Mo. 438; State v. Grisham, 90 Mo. 165. (2) That a statute is a remedial one is no reason for not applying the rule of *ejusdem generis*. The Supreme Court has applied the rule to the Homestead Statute, a statute held to be a highly remedial one. Regan v. Ensley, 283 Mo. 297. (3)

The only condition under which a departure from the rule is justified is a case in which the particular words exhaust the class or genus to which they belong. The statute in question does not present such a case, for the particular words do not exhaust the genus. State ex rel. v. Wurdeman, 227 S. W. 67. (4) The court should not read into the statute words which have been omitted by the Legislature. Dworkin v. Ins. Co., 226 S. W. 851. (5) In the judicial construction of a statute, the construction placed upon it by the general understanding of the public is entitled to persuasive force. Timmonds v. Kennish, 244 Mo. 318; Fears v. Riley, 148 Mo. 49; Barber Asphalt Paving Co. v. Meservey, 103 Mo. App. 186; Verdin v. St. Louis, 131 Mo. 125.

*Conrad Paeben* for respondents; *James T. Roberts* of counsel.

(1) The several courts of appeals have as much right to construe the statutes as has the Supreme Court, and if such construction is demanded in the course of decisions in cases coming properly within their jurisdiction, their construction is as final in such cases as is the construction of statutes by the Supreme Court. Sublette v. Railroad, 198 Mo. 192; McManus v. Burrows, 217 S. W. 514. (2) What is commonly called the Guarding Statute or Factory Act (Sec. 6786, R. S. 1919), being highly remedial and an enlargement of the rights formerly given under the common law, must be liberally construed so as to effectuate the true intent and meaning thereof. Sec. 7048, R. S. 1919; Austin v. Bluff City Shoe Co., 176 Mo. App. 565; Cole v. North American Lead Co., 240 Mo. 247. (3) The doctrine of *ejusdem generis* is a rule of construction only, and should never be invoked to defeat the manifest purpose of the statute, but should be applied as an aid in ascertaining the legislative intent and does not control where it clearly appears from the statute, as a whole, that any such limi-

tation was intended. 36 Cyc. 1120; Henderson v. Wabash, 81 Mo. 605; Lexington v. Bank, 130 Mo. App. 687; Bank v. Ripley, 161 Mo. 126. (4) Where the particular words exhaust the class or genus, there is nothing *ejusdem generis* left, and in such cases the courts must give the words a meaning outside of the class indicated by the particular words or we must say that they are meaningless, thereby sacrificing the general words to preserve the particular words. Bank v. Ripley, 161 Mo. 126; 39 Cyc. 1222. (5) The subject-matter of the statute and the purpose the Legislature had in mind is ·the guarding of machinery. The act described the machinery to be guarded and the words here under consideration, "In all manufacturing, mechanical and other establishments" are used incidentally in connection with the main purpose in view. Tatum v. Laundry Co., 208 S. W. 143. (6) "Mechanical" is a term of very broad meaning and is defined as "pertaining to mechanics or machinery," and a mechanic is one engaged in operating machines or machinery. The term "mechanical establishment" is broad enough to cover any place or plant where machinery is set up and used. Tatum v. Laundry Co., 208 S. W. 142. (7) A power-driven saw, not in a building, temporarily placed and used for cutting lumber for a viaduct, comes within the meaning of the word "establishment." Henderson v. Heman Const. Co., 199 S. W. 1045.

SMALL, C.—We heretofore issued our · writ of *certiorari* to the honorable judges of the St. Louis Court of Appeals in the case of Meta Stoll v. Frank Adam Electric Company, a cause duly pending in and decided by that court, to which it was appealed by the plaintiff, who was non-suited below. The suit was brought in the Circuit Court of the City of St. Louis upon the charge and evidence tending to prove that the defendant Electric Company, which conducted a store on Pine Street in said city for the sale of electric washing machines and other electrical apparatus, failed to guard the dangerous

machinery in such washing machines, whereby plaintiff was injured.

The Court of Appeals in its opinion reversed the judgment of the lower court, and at the instance of defendant we issued our writ of *certiorari* to review the action of the Court of Appeals. The opinion of said court, omitting the caption, is as follows:

"This is an action to recover for personal injuries alleged to have been sustained by plaintiff while working as a clerk or demonstrator in defendant's place of business, by having her hand caught between the rubber rollers of an electrically operated 'wringer' attached to a washing machine.

"The court gave a peremptory instruction for defendant at the close of plaintiff's case, and plaintiff took an involuntary nonsuit with leave to move to set the same aside. Upon the overruling of said motion plaintiff perfected her appeal to this court.

"The accident occurred on the 12th of December, 1918, and this action is based upon Section 7828, Revised Statutes 1909, now Section 6786, Revised Statutes 1919.

"The defendant conducted a store on Pine Street, in the city of St. Louis. In this store were the usual fixtures to be found in one of this kind. Arranged on the floor were rows of electric stoves and electric washing machines. These machines were so arranged as to create a narrow aisle wide enough for a person to walk through. Plaintiff was employed as a saleswoman, and worked for defendant in this store, which was designated as an electric shop. It was plaintiff's duty to sell anything in the store that customers wanted. She had worked for defendant about three months prior to the accident. When a customer would come in it was plaintiff's duty to demonstrate these washing machines with their various attachments. The machine which caused plaintiff's injury is known as a Thor washing machine. There is a button attached to the machine which turns

on the electric power. This power is conveyed to the machine by means of an electric cord which is plugged in at a socket located near the desk. There is a lever which is used to start and stop the rollers of the wringer attached to the machine. She plugged in the socket located on the floor, and as she arose some one was trying to pass her in the narrow aisle as she stood close to this washing machine. The rollers which caught her hand were not guarded. In answer to the question as to how it happened, she stated: 'As I got up to a standing position some one was going past me, and turning my body I was standing at this machine, this Thor machine, and my hand was drawn in between the rollers of this machine, which were running, just to take my hand through.'

"It appears that she did not start the machine after plugging in the cord, but it had been left apparently in a position to start as soon as the cord was attached. The rollers in this wringer were located at a height slightly above the waist-line of plaintiff. The machines were not manufactured in this establishment, but were merely sold there as a retail store. The evidence also discloses that it was possible to guard the rollers of this machine, and that similar machines were guarded in laundries.

"Aside from the doctor who testified as to plaintiff's injuries, only three witnesses testified in this case.

"I. The facts are plain and undisputed. The questions of law presented by this appeal are: whether or not defendant was engaged in such business as comes within the provisions of the section of our statute above referred to; and, whether or not plaintiff was guilty of contributory negligence as a matter of law.

"II. The statute upon which this action is based, as it existed at the time of the accident, reads as follows:
" 'The belting, shafting, machines, machinery, gearing and drums in all manufacturing, mechanical and

Vol. 299]       APRIL TERM, 1923.                31

State ex rel. Frank Adam Electric Co. v. Allen.

other establishments in this State, when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties, shall be safely and securely guarded when possible,' etc.

"This statute has been construed by our appellate courts a number of times, although the exact questions presented here have not been heretofore directly passed upon by any of the courts of this State, so far as we have been able to ascertain.

"Our Supreme Court, in Cole v. North America Lead Co., 240 Mo. 397, 144 S. W. 855, stated that this section of our statute was 'one of the wisest and most humane statutes to be found upon our statute books, and should be given a broad and liberal interpretation, because it is remedial and highly salutary. . . . The Legislature knew that the human mind and conduct was such that a servant when in the performance of his duties to his master, surrounded by dangerous machinery, in motion, with his mind concentrated upon his work, oblivious to his surroundings, is liable to slip or take a misstep and fall into the revolving machinery, or thoughtlessly thrust his hand or other portion of his body into the gearing or other portion of the machinery. . . . It was the intention of the Legislature and the object and purpose of the statute to put a stop to all such injuries which grow out of such inattention, inadvertence, mishaps or accidents, that is, such acts of omission.'

"In Yates v. House Wrecking Co., 195 S. W. (Mo. App.) 549, l. c. 551, it is said: 'The question, primarily, is not at what particular place is the machinery located, but rather is, where is it located with reference to the servant's ordinary duties. If, in the performance of such duties, he must go or reach in dangerous proximity to the machinery, it should be "securely guarded when possible."'

"In Austin v. Shoe Co., 176 Mo. App. 546, 158 S. W. 709, it was held by this court that this statute is highly remedial, and although it changes the common law, it

is to be liberally construed in favor of the safety of the lives and limbs of employees who may be employed about dangerous machinery, and that the very language of the statute affords unmistakable evidence of the broad purposes held in view by our legislators in providing for the safety of employees engaged in and about the factories and workshops in this State. In this connection, see also, Henderson v. Heman Const. Co., 198 Mo. App. 423, 199 S. W. 1045; Willadsen v. Blue Valley Creamery Co., 201 Mo. App. 527, 214 S. W. 258; 18 R. C. L. 591.

"Defendant contends that the phrase 'and other establishments' in the connection it is used, was intended to embrace places of the same general character as those enumerated, thus calling for the application of the rule of *ejusdem generis*. In view of what has been said by the courts of this State in construing this statute, and the object, purposes, and intent of the Legislature in its enactment, we would not be justified in placing this narrow and constrained construction upon it. Section 7827, Revised Statutes 1909, which immediately precedes the one in question, and is a part of the same article, provides that 'all accidents in manufacturing, mechanical, mercantile or other establishments or places within this State where labor is employed which prevent the injured person or persons from returning to work within two weeks after the injury, or which result in death, shall be reported by the person in charge of such establishment or place to the factory inspector,' etc. In that section, in addition to mechanical and manufacturing establishments, mercantile establishments are specifically mentioned as establishments which must deal with the factory inspector with respect to the events or happenings enumerated in the section. We see no occasion or reason here for applying the rule of *ejusdem generis* to restrict the natural and broad meaning which would be applied to the phrase 'and other establishments' by the persons for whose benefit the law was enacted, and which,

in commonplace affairs would be applied to the words. If our legislators intended a different meaning, it would have been easy for them to have said so.

"In Kosidowski v. Milwaukee, 152 Wis. 223, the Supreme Court of Wisconsin, under circumstances similar to those which confront us, addressing itself to this point, made use of the following language: 'Any resort to subsidiary rules for construction to restrict the meaning would result in defeating the will of the lawmaking power instead of giving full effect thereto. The latter is a judicial duty, and should be, as it is, a judicial pleasure.'

And in Caddy v. Interborough R. T. Co., 195 N. Y. 415, it is said: 'In cases like this, lexicographers' definitions are useful as guide posts, but they do not take us to our destination. The statutory meaning of a word or phrase must be gathered from the purpose for which the law containing it was enacted.'

"It is not contended that this was not a 'machine' within the meaning of the statute in question. We think the Legislature, by the enactment of this statute, intended to afford the same protection to employees in 'other establishments,' while engaged in their ordinary duties, if such duties required them to work near unguarded machinery, as it did to employees in manufacturing or mechanical establishments, and that our legislators, in the use of the phrase 'and other establishments' meant just what they said, and if they had intended otherwise they could easily have said so. This language is broad enough to include a mercantile establishment where labor is employed and unguarded and dangerous machinery is used.

III.   As to the defense of contributory negligence, it appears that plaintiff was required to use this narrow aisle while in the discharge of her ordinary duties, and that, while she was in the aisle for the purpose of demonstrating this machine to a prospective customer, some

299 Mo.—3.

other person in the store attempted to pass her in this narrow passageway. On attempting to permit this person to pass, plaintiff in some manner thrust her hand toward this machine and her fingers were caught in the rollers thereof and she received the injuries in question; and under such facts as are disclosed by this record, we would not be warranted in holding plaintiff guilty of contributory negligence as a matter of law. [Tomlinson v. Marshall, 236 S. W. 680.] It follows, therefore, that the court erred in not sustaining plaintiff's motion to set aside the involuntary nonsuit. Therefore, the Commissioner recommends that the judgment be reversed and the cause remanded.

"PER CURIAM:—The foregoing opinion of NIPPER, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed and the cause remanded. *Allen, P. J., Becker* and *Daues, JJ.*, concur."

I. We are met at the threshold of this case with the contention on the part of respondents that this court has no jurisdiction because the gist of relator's complaint is that the Court of Appeals has simply erroneously construed Section 6786, Revised Statutes 1919, relating to guarding dangerous machinery, and has pointed out no decision of this court which has construed said section differently from, or in any manner conflicting with, the decision of the appellate court before us for review. A merely erroneous construction of a statutory provision, on which the Supreme Court has not passed, by a Court of Appeals, vests no superintending jurisdiction in this court by writ of *certiorari*. [Sublette v. Railroad, 198 Mo. 190; State ex rel. v. Sturgis, 208 S. W. 458-460; State ex rel. v. Reynolds, 214 S. W. 1. c. 122; State ex rel. v. Reynolds, 216 S. W. 774-5; McManus v. Burrows, 217 S. W. 514; State ex rel. v. Reynolds, 233 S. W. 1. c. 484; State ex rel. v. Allen, 242 S. W. 679-80.]

The only contention of relator is that the rule *ejusdem generis* applies to the construction of said Section 6786, whereas the St. Louis Court of Appeals has decided that said rule does not apply. No general rule of law contrary to said rule of *ejusdem generis* is announced in the opinion of the Court of Appeals, and the conclusion of said court is not contrary to any previous decision of this court upon the same or a similar state of facts. The charge that the opinion is erroneous because contrary to the rule of *ejusdem generis,* is simply an argument that it failed to apply a proper general rule of construction established by this court, to said statute and the facts before it—that is, failed to properly construe said statute in this case. This is not sufficient to invoke our jurisdiction. Relator must point out some decision of this court where the facts were the same or similar to those in this case, in which it was held that said rule of *ejusdem generis* applied to said statute. [State ex rel. v. Allen, 242 S. W. 679-80; State ex rel. v. Sturgis, 208 S. W. 458, 1. c. 461, and other cases cited.]

We are cited by learned counsel for relator to the following cases: State v. Wade, 267 Mo. 249, 1. c. 257; Regan v. Ensley, 283 Mo. 1. c. 307; State ex rel. v. Wurdeman, 227 S. W. 1. c. 67; St. Louis v. Laughlin, 49 Mo. 559; State v. Dinnisse, 109 Mo. 1. c. 438; State v. Grisham, 90 Mo. 1. c. 165, 166. Such cases, however, involve and apply the rule *ejusdem generis* to the construction of other statutes, notably the Homestead Law, and other statutes in no manner relating to the guarding of dangerous machinery, and are irrelevant to the question of our jurisdiction in this case, which is the initial point for us to decide herein. We have no general jurisdiction over the Courts of Appeals by appeal or writ of error for the correction of errors in their decisions as we have over the circuit courts. Our right and power of superintendence over said courts by writ of *certiorari,* as invoked in this case, is limited to cases where the decision of the appellate court is in conflict with the last previous

decision of this court. Unless, therefore, this court has heretofore determined a case involving the same or similar state of facts as the case now before us, and therein held that such facts constituted no cause of action against the defendant and in favor of the plaintiff by reason of the rule of *ejusdem generis* applying to the construction of said statute, there is no previous decision of this court in conflict with the decision of the Court of Appeals. We have not heretofore had before us any case construing said statute as to the same or similar facts. We have never determined whether said rule of *ejusdem generis* applies or does not apply to said statute under any state of facts. We cannot therefore inquire into the correctness of the ruling of the Court of Appeals in the instant case (State ex rel. v. Reynolds, 216 S. W. 1. c. 774-5, and other cases cited, supra), and we do not do so, but leave that question open to be decided when it is properly before us, in a case of which we have jurisdiction.

The result is, our writ heretofore issued herein, is quashed. It is so ordered.

PER CURIAM:—The foregoing opinion by SMALL, C., in Division One, is hereby adopted as the opinion of Court in Banc. *Woodson, C. J.,* and *Walker, J.,* concur; *Ragland* and *White, JJ.,* concur in result; *James T. Blair, David E. Blair* and *Graves, JJ.,* dissent.