CHARLES O. MANKER, Respondent, v. STANDARD OIL COMPANY OF INDIANA, Appellant.

Kansas City Court of Appeals, February 16, 1920.

1. **MASTER AND SERVANT: Negligence: Failure to Provide Guard for Unsafe Machinery.** In an action based on section 7828 Revised Statutes 1909, which requires a guard for dangerous machinery when possible, and if not possible the posting of notice of its dangerous character, there can be no recovery under proof that a guard had been provided for the machinery causing the injury, that had it been properly adjusted the injury would not have occurred; that it was plaintiff's duty when using the machine to make proper adjustment of the guard; that the guard failed to work but that plaintiff making no complaint about the failure of the guard to work, proceeded to use the machine knowing the danger.

2. ———: ———: **Failure to Post Notice of Danger.** Under the above statute notice of the danger of a machine must be posted only when there is no guard which can be provided, or when no guard has been provided.

Appeal from Jackson Circuit Court.—Hon. *Willard P. Hall*, Judge.

REVERSED.

*C. W. Prince, E. A. Harris, J. N. Berry* and *J. E. Westfall* for respondent.

*John H. Lucas* and *William C. Lucas* for appellant.

TRIMBLE, J.—Plaintiff, a carpenter in the employ of defendant, while at work at defendant's planer,

a machine having knives on a cylinder rotating at a high rate of speed and used for planing and truing the surface of lumber, was on the 18th of December, 1916, injured by reason of his left hand and arm coming in contact with said knives, and brought this suit for damages. He recovered judgment in the sum of $6200 and the defendant has appealed.

The charge in the petition is that:

"Defendant carelessly and negligently maintained said planer and required plaintiff and other workmen to work at and near said planer without having any safe and secure covering or guard or other protection to prevent plaintiff and such other workmen from coming into contact with said rotating knives, and carelessly and negligently failed to safely and securely guard said planer and rotating knives. That said planer and rotating knives could have been guarded, and it was perfectly feasible, practicable and possible to guard the same without in any way interfering with the efficiency of said planer and rotating knives, or any of the machinery connected therewith; that the use of said planer and rotating knives without a safe and secure guard is highly dangerous and unsafe to the operator thereof, while engaged in his ordinary duties, and defendant knew or by the exercise of ordinary care and caution might or could have known that the operation of said planer and rotating knives without the use of safe and secure guards thereon was likely to entail injury to those who worked about the same, and particularly this plaintiff, that no notice was posted in said establishment, giving warning of the dangerous character of this instrumentality."

The answer was a general denial coupled with a plea of contributory negligence in that plaintiff failed to make proper use of the guard which was on the machine, and the further plea that if he was injured it was the result of the risks ordinarily and usually incident to the business which he assumed in entering upon the employment.

One of the points made by respondent in his brief, which in the argument is termed a "motion to dismiss, though no formal motion to dismiss appeal was filed, is that the appeal should not be considered because of the insufficiency of the motion for new trial and of appellant's brief to specify the errors relied upon. Manifestly, however, both the motion for new trial and the brief are sufficient to present the errors relied upon and discussed herein, and hence the point made by respondent must be ruled against him. [State ex rel. United Railways v. Reynolds, 213 S. W. 783; Vahldick v. Vahldick, 264 Mo. 529, 532.]

At the conclusion of the evidence in plaintiff's behalf and again at the conclusion of all the testimony, the defendant interposed a demurrer which was overruled. The propriety of this ruling presents the main question in this appeal, the defendant contending that under the pleading and evidence plaintiff is not entitled to recover.

Unquestionably, the charge in the petition is based upon and attempts to charge a violation of the statute (sec. 7828, R. S. 1909) requiring that machines "in all manufacturing, mechanical and other establishments in this State, when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties, shall be safely and securely guarded when possible, if not possible, then notice of its danger shall be conspicuously posted in such establishments." But the question is, does the evidence support the cause of action pleaded? A proper understanding of this question calls for a description or the machine and a statement of plaintiff's evidence. It is from this source alone that we gather the facts hereinafter stated, so that they must be regarded as conceded and conclusive, at least for the purpose of disposing of defendant's appeal.

The planer in question consists of a long table some three or four feet wide having a cylinder crosswise thereof and rotating just below the top of the

table so that the knives on the cylinder came slightly above the surface of the table in a narrow opening or groove across the same thus permitting them to plane or true the surface of a board or timber when placed on the table, pressed against the guide at the back side thereof and shoved to the left over the table as the planing progresses. The table stood with its length extending north and south. The guide, against which the board or timber was pressed to make it run true, was at the back or west edge of the table and the operator stood on the east side of the table at or about opposite the crosswise groove in which the revolving knives turned, said groove and revolving cylinder extending from the guide to the east edge of the table top where the workman planing the board stood. The board to be planed was pressed west against the guide and shoved to the south, the surface next to the table top being planed as it passed over the revolving knives. The cylinder was revolved at a high rate of speed by electricity which was turned on when the operator desired the planer to be set in motion, the cylinder revolving to the north and opposite to the direction the board was shoved.

At the back or west edge of the table, near that end of the groove, an iron bar rose perpendicular for two or three feet and then turned horizontally east across the table over the groove for almost the width of the table. The east end of this horizontal bar held a perpendicular tube some two or three inches in length in which was a rod which could be moved up and down and held at any point by means of a set- or thumb-screw on the tube in front of and within easy reach of the operator. On the lower end of the rod was fastened a slightly curved horizontal plate or guard which was large and wide enough to cover the greater part of the tube and especially that portion of the groove, in which were the knives, next to the operator. The guard could thus be raised or lowered and set at any height above the table by means of the thumbscrew in

the tube at the end of the arms as above stated. The guard was thus made so it could be raised or lowered in order to allow any width of timber to be placed on the table and planed and to pass under the guard no matter how thick said timber might be, that is, within the limits between the table surface and the highest point to which the guard could be raised. And the duty of raising or lowering this guard and adjusting it at the proper height suitable to the particular timber desired to be planed, devolved upon the one who desired to make use of the planer and he could do this before setting the cylinder in motion by turning on the electricity.

Plaintiff's work did not require him to be constantly at the planer nor did any one employee operate said machine, but whenever in the course of the work being done a workman desired to plane or true a board, such workman would do it at the planer, adjusting the guard so as to be best suitable to the particular piece of work being planed as hereinbefore stated. Plaintiff, however, was well acquainted with such machines and the danger attached to the operation of them, having worked with and about them for several years.

In the prosecution of plaintiff's work in putting some vestibules about the doors to keep out the wintry blast, it became necessary to plane or true the *edge* of a long board two inches thick by twelve inches wide. To do this, he placed the board on its *edge* on the table, the *side* of the board against the guide and, of course, the edge to be planed on the surface of the table. The timber to be planed on this occasion was, therefore, only two inches thick east and west and twelve inches up and down. So that in planing this board it could pass over the knives at the back side of the table even if the guard were let entirely down on the surface of the table, in which case *that portion* of the groove containing the revolving cylinder and knives *on the side next to plaintiff* would have been thoroughly covered. And plaintiff says that had the guard been lowered to this

position, or to a point near the surface of the table, his injury would not have occurred.

He says that when he took the board to the planer he found the guard was up "too high." (From the photograph which plaintiff says showed the position of the guard exactly as it was when he was hurt together with the same sized board, we judge that the guard must have been about fifteen inches above the table, and defendant's witnesses say it was about at this height). Plaintiff says he tried to get the guard down but it would not move whereupon, to prevent it coming down on account of the jar of the machinery during the prosecution of the work, he tightened the thumbscrew so it could not do so. He went ahead with the planing of the board knowing and being fully aware, so he himself says, of the danger of using the machine with the guard thus raised above the table. He says also that the board could easily have been run through the planer with the guard down close to the table top and that it was unnecessary to have it raised any distance therefrom. He says also that he did not notify the superintendent or foreman or anyone that the guard would not come down; and there was no evidence that the guard had been so it would not come down for any length of time prior to this occasion when he tried to lower it.

In the course of planing the edge of the board, plaintiff says he stepped on a piece of gas pipe which he did not know was in the shavings on the floor, and this gas pipe rolling under his foot caused him to lose his balance and fall forward thrusting his left hand and arm down against the revolving knives whereby he was injured.

Thus it will be observed that in this pleading he has charged a failure to guard as required by the statute at that time in force, while in his evidence he shows that there *was* a guard; that the guard was *adjustible* so made as to permit timbers of different sizes to be planed on said machine; that the duty of adjusting the guard in accordance with the particular timber to be

planed, was upon the one desiring to use the machine; that it was unnecessary to have the guard raised at all in order to plane this particular board; that had the guard been down close to the surface of the table he would not have been injured; that when he found the guard was up and would not come down he did not inform the defendant or anyone in authority so that the guard could be adjusted; but without saying anything to anyone, except his associate whom plaintiff says tried with him to lower the guard, and knowing full well the danger of so doing, plaintiff proceeded to use the machine with the guard as it was. There was no claim that the guard had been in this condition for *any* length of time prior to plaintiff's attempt to lower it, and other workmen, who had occasion to use the planer shortly after the accident, found it in perfect working order; also that both before and after the injury the guard worked properly and the rod to which the guard was attached moved so easily up and down that when the guard was up it would fall of its own weight when the thumbscrew was turned so as to loosen it. These were witnesses for the defendant, and hence this last evidence does not come within the category heretofore denominated as being conceded and conclusive. According to the evidence of plaintiff's associate, whom plaintiff says helped him to try to get the guard down, which associate, however, was defendant's witness, plaintiff raised the guard himself and although he was there assisting plaintiff he did not see the latter try to get it down. However, we cannot give any effect to defendant's evidence in passing on the question under consideration. It is only mentioned to show what was defendant's contention as to the facts, and in corroboration of the fact that the guard was not in bad working order before the time plaintiff attempted to use the planer.

Accepting plaintiff's evidence at its full value and disregarding defendant's evidence we are of the opinion that no case *under the statute* was made by the evidence. The statute in force at the time of the injury did not re-

quire the defendant to provide a guard that would adjust itself automatically. In Laws of 1919, p. 446, section 7828a, it is required that "all power-driven circular saws must be provided with safety guards which raise and lower automatically for various thicknesses of materiol" etc., and this shows that the duty of having an *automatically* adjustible guard did not theretofore exist by reason of the statute. And at the time the injury herein sued for occurred, December 18, 1916, no such requirement was in the statute.

The cause of action pleaded was a failure to safely and securely guard *when possible,* a duty imposed by statute. The evidence disclosed that a safe and secure guard was provided; that to do the work required of the machine the guard had to be adjustible, that is, movable up and down according to the work to be done, and this adjustment was to be done by the operator before starting the machine; that there was a secure guard but for some mysterious reason it suddenly and momentarily refused to be adjusted; whereupon the operator, the only one who knew of this mysterious and sudden condition, chose to operate the machine with the guard up and without informing the master of the situation or giving him any opportunity to remedy the matter. The statute did not intend that the master should stand over and watch the machine and thus "maintain" the guard in the sense required by the circumstances of this case. It is true, that in Lore v. American Mfg. o., 160 Mo. 608, the master was held liable under the statute where a guard was provided but which was *out of repair.* But in that case the defective state of the guard made it no guard at all, and this defective condition had existed from several months to two years before the injury, and the Supreme Court on page 675 say, "We think the evidence was sufficient to show *negligence* in not repairing this guard." (Italics ours.) The case of Henderson v. Heman Construction Co., 198 Mo. App. 423, cited and relied upon by plaintiff, is not an authority in point here, because in that case the hood claimed to be a guard

did not cover the entire surface of the saw. In other words, it was an insufficient guard and there was evidence that a safer and much more secure guard could have been put over the saw without interfering with the work.

We are not permitted, nor do we desire, to broaden or extend the scope of the statute by a construction which in fact amounts to judicial legislation. [Simpson v. Witte Iron Works, 249 Mo. 376, 390; Demer v. Sutermeister, 266 Mo. 505, 520.] In the case last cited so careful was the Supreme Court not to extend the scope of the statute that it refused to declare a "hoist" to be a "structure" within the meaning of section 7843, Revised Statutes 1909. [See, also, Strode v. Columbia Box Co., 250 Mo. 695, 708.]

The statute did not "undertake to increase or diminish the degree or scope of the master's care toward his employees beyond the guards provided for therein." [Cole v. North American Lead Co., 240 Mo. 397, l. c. 408.] Hence, so far as any liability for the failure of the guard to work under circumstances of this case is concerned, liability, if any, would raise under the common law and not by reason of the statute; and before defendant could be held liable for *this* defect in the guard, it must have known, or had reasonable time to know, of the defective condition. No cause of action based on this state of facts was pleaded, and if it had been pleaded, no such cause of action was proved.

The allegation of failure to give notice cannot be given any effect for the cause of action is not based upon that. The theory of plaintiff's petition is that the planer *could* be guarded and was not. If that was the fact then defendant was negligent in not providing a guard for the machine. If the planer could *not* be guarded then a failure to give notice is negligence. It is well settled that a plaintiff cannot plead one cause of action and recover upon a different one. [Huss v. Heydt Bakery Co., 210 Mo. 44, 51.] This is true even if the evidence had supported a cause of action,

based upon a failure to give notice, which, of course, it did not. Nor could it have done so without disproving the other charge.

In fact, as hereinabove stated, the statute did not in any manner undertake to increase or diminish the degree or scope of the master's care toward his employees. It simply made the failure of the master to provide a guard, when possible, conclusive negligence, and when a guard was not possible the failure to post notice was conclusive negligence. There can be no recovery against the master unless there is negligence either statutory or common law. Recovery by the servant depends and rests solely upon the negligence of the master. [18 R. C. L., 544-546.] The evidence in this case does not disclose either statutory or common-law negligence. The judgment is reversed. All concur.