RICHARD JOHNSON, APPELLANT, v. W. R. BEAR, RESPONDENT.*—40 S. W. (2d) 481.

Kansas City Court of Appeals. May 4, 1931.

*Whitson Rogers* and *Lyons & Ristine* for appellant.

*Blackwell & Sherman* and *Ike Skelton* for respondent.

BOYER, C.—Action for personal injury. As appears from the petition, plaintiff was a farm hand in the employ of defendant. His hand was injured while working about an ensilage cutter by being caught in the machinery, cogs and chain of a revolving apron forming a part of the cutter and being operated in connection with it. The injury occurred August 6, 1928, the extent of which is described, and the petition alleges: "That said revolving apron is so constructed that the chain and cog wheels on the lower part thereof were open, exposed, unguarded and dangerous;" that the cutter was being used by defendant on his farm to cut fodder into ensilage and was in

1098

his exclusive possession and control. The negligence alleged is set forth in the following paragraph:

"Defendant was negligent in this, to-wit: that he placed and maintained said ensilage cutter and the feeder apron, chain, and cogs thereon in such a position as to be dangerous to plaintiff and other persons working thereabout, while plaintiff and said other persons were engaged in their ordinary duties, and although it was possible to safely and securely guard said ensilage cutter without decreasing its efficiency or interfering with its operation, the defendant negligently failed to do so, in direct violation of section 6786, Revised Statutes of Missouri, 1919, as a direct result of which plaintiff suffered the above described injuries. While performing his duties as such feeder, as directed by defendant, as a direct result of said negligence of defendant, plaintiff's right hand was caught in the machinery, cogs, cog wheels, and chain of said apron of said ensilage cutter, and injured as herein alleged."

Defendant filed a demurrer to the petition on the ground that it does not state facts sufficient to constitute a cause of action. The demurrer was sustained, to which action plaintiff excepted and declined to plead further. Whereupon the court found the issues for defendant and against plaintiff, and ordered and adjudged that plaintiff take nothing and defendant go hence. Plaintiff has duly appealed, and in his brief and argument presents the single point that section 6786, Revised Statutes 1919, requires an ensilage cutter to be guarded while in use on a farm and therefore the demurrer was erroneously ruled. Respondent contends that said section does not apply, and for that reason no cause of action is stated. It is the position of both parties that the alleged cause of action is based entirely upon a violation of the statute.

OPINION.

Does the section named apply to the farm as well as to the factory and "other establishments" included in its terms? This is the question to be answered. The section reads as follows:

"Section 6786. Belting, etc., to be guarded.—The belting, shafting, machines, machinery, gearing and drums in all manufacturing, mechanical and other establishments in this State when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties, shall be safely and securely guarded when possible; if not possible, then notice of its danger shall be conspicuously posted in such establishments. Whenever the industrial inspector, or his assistant, or deputy, finds that guards have not been installed or notice of danger posted, as required by the provisions of this section, he shall at once, in writing, order the owner or owners, or the person or persons in charge of the machinery, plant, establishment, or place, to make the alterations, additions, or repairs neces-

sary within ten days; and if the said alterations, additions, or repairs be not made within ten days from the date of such order, then such failure to make such alterations shall be deemed a violation of this article, and in addition to the penalties hereinafter prescribed for such violations, the inspector, or his assistant or deputy, shall be and is hereby empowered to, and he shall seal said defective appliance or appliances in such a manner as to render the same inoperative until said order of the inspector has been complied with. [R. S. 1919, Sec. 7828, amended Laws 1919, p. 443.]".

Appellant insists that the words "manufacturing, mechanical and other establishments" are broad enough to include the farm, and that dangerous machinery there in use must be securely guarded when possible; that the section must have a liberal construction; and in construing the meaning of "other establishments" the rule of *ejusdem generis* is not to be applied; and that the statute applies to the use of machinery at *all places* where employees must come in close contact with it.

Appellant cites four cases which he claims sustain his contention. They are the following: Stoll v. Frank Adams Electric Co., 213 Mo. App. 395, 240 S. W. 245; Pavlo v. Forum Lunch Co., 19 S. W. (2d) 510; Henderson v. Heman Construction Co., 198 Mo. App. 423, 119 S. W. 1045; Goodson v. Luce, 24 S. W. (2d) 682.

In the Stoll case defendant conducted a store, designated as an electric shop, on the floor of which were rows of electric stoves and electric washing machines. The machines were so arranged as to create a narrow aisle. Plaintiff was a saleswoman and it was her duty to sell anything in the store that customers wanted. It was her duty to demonstrate the washing machines with their various attachments. She sought to demonstrate one of these machines and while she was doing so a person was trying to pass her in the narrow aisle as she stood close to the machine. Her hand was caught in the rollers of the machine which were not guarded. The court held, in view of the preceding section, which specifically mentions mercantile establishments as ones required to deal with the factory inspector, that the section requiring machinery to be guarded should be construed to apply to mercantile establishments as well as to manufacturing and mechanical establishments. It was further held that there was no occasion or reason to apply the rule of *ejusdem generis* to restrict the natural and broad meaning which would be applied to the words "other establishments." This case reached the Supreme Court (State ex rel. Frank Adams Electric Co. v. Allen, 299 Mo. 25) on writ of *certiorari.* The writ was quashed on the ground that the opinion did not conflict with any previous opinion of the court. The opinion was written by a commissioner and was adopted by the court *en banc* in the following manner: Two judges concur; two judges concur in result, and three judges dissent.

In the Pavlo case defendant was conducting a cafeteria in which it used and operated a bread cutter, in the use of which one of its employees was injured. The statute was said to apply, apparently on the ground that defendant was operating an ''establishment'' within the meaning of its terms.

In the Henderson case the defendant moved various pieces of machinery to the site of the construction of a viaduct. Among the machinery moved to that place and put to use was a saw upon which an employee was injured. Defendant was engaged in sawing lumber of all kinds and for various purposes. It had upon the ground hoisting machines, concrete mixers, and an office building. These were being used in the work of constructing the viaduct. The appliances were not enclosed in any building. Defendant was held liable under the guarding statute and in the course of the opinion (l. c. 436) is this language:

''This defendant was undoubtedly engaged in a branch of manufacturing or mechanical work and its appliances used were as much included within this law as if they had been housed and covered up and all under roof. It was engaged in a manufacturing and mechanical enterprise requiring the use of machinery.''

In the Goodson case defendant was operating a trunk factory and the employee was injured while working at an unguarded stitching machine.

We fail to find anything in the foregoing cases that is of any material assistance in the solution of the question in hand. There is no construction to the effect that an ensilage cutter or other machinery, when in use upon a farm, is covered by the statute or that a farm is an ''establishment'' within the meaning of its terms. We are without precedent in this State to aid in the decision of the precise question presented in the case at bar.

In the case of Adams v. Thayer, 222 Mo. App. 907, one of the defenses presented was that defendant was engaged solely in agricultural pursuits and there was no legal duty resting upon him to provide any guard for a power-driven circular saw for the protection of a farm laborer. The question as to whether section 6787, Revised Statutes 1919, providing that all power-driven circular saws must have safety guards, applied to farmers as well as to those engaged in a manufacturing or mercantile business was presented but not decided because the petition was sufficient to constitute a cause of action for negligence at common law.

The Supreme Court of Iowa in the case of Plew v. James Horrabin & Co., 176 Ia. 584, 157 N. W. 453, in construing a statute which provided a duty on the part of a person in charge of any manufacturing or other establishment where machinery is used to properly guard machinery, held that an employee who was injured while placing a pin in the working parts of a self-propelling con-

crete mixer mounted on wheels, operated by steam and used for preparing and laying pavements in the street where the work was done could recover under the statute, and that.the word ''establishment'' required a liberal construction to give effect to the statute and included such an apparatus as that by which plaintiff was injured. The same court later, in the case of Slycord v. Horn, 179 Ia. 936, 162 N. W. 249, ruled that an employee while operating a corn shredder was engaged in agricultural pursuits and did not come within the compensation act of that state. And still later, in the case of Hainer v. Churchill, 173 N. W. 882, construing the same section of the statute requiring safety devices and guards on machinery used in ''manufacturing or other establishments'' it was held that it did not apply to a portable steam-power corn sheller while in use on a farm, and that the employee who was injured while working at the machine was a farm laborer engaged in agricultural employment and had no right of action under the statute. The last ruling was apparently influenced by the fact that another section of the statute, together with the appropriate principles of the common law of negligence, afforded ample remedy if the injury was attributable to the negligence of defendant.

The views of the courts of Kansas and Wisconsin are reflected in Whipple v. McLean, 124 Kan. 206, and Chapman v. Piechowski, 153 Wis. 356, 141 N. W. 259. They are to the effect that the respective Factory Acts do not apply to the use of machinery on the farm.

From an examination of our own Factory Act and its evolution to date, including the particular section upon which this cause of action is based, we are inclined to the opinion and hold that the Legislature never intended it to apply to machinery used in agricultural pursuits, nor to the health and safety of employees on the farm; and never intended to extend any new or additional remedy to farm laborers who may be injured while working at or near such machinery. A consideration of different subjects has led to this view. We have sought diligently for an expressed or implied legislative intent to extend the protection of the statute to farm labor and have failed to find it. The scope and effect of a statute cannot be extended beyond the limit of its plain intendment merely by a desirable judicial construction. The courts cannot assume legislative functions. [Manker v. Standard Oil Co., 221 S. W. 139, 142.]

In the Laws of Missouri 1891, page 159, we find the statute entitled: ''An act relating to manufacturing, mechanical, mercantile and other establishments and places, and the employment, safety, health and working hours of employees.'' This is the so-called Factory Act. A perusal of it yields no intimation that the Legislature even had in mind the question of the health and safety of farm employees, or to require the guarding of machinery while in

use on the farm. On the other hand, it is obvious that industrial conditions in urban centers, and a desire to protect the health and safety of employees while engaged in factories, machine shops, work shops, and mercantile establishments under congested conditions, and while in close proximity to dangerous machinery, furnished the motive and reason for legislative action. The first section of the act imposes the duty upon municipalities of 5000 inhabitants or more to appoint an inspector and deputies, if necessary, to make frequent inspection of factories employing more than ten persons and to make semi-annual reports to the state labor commissioner, and to cause any violation of the act to be brought to the attention of the grand jury. Provision is made for reporting accidents, for guarding machinery, for hatchways, elevators, fire escapes, doors, ventilation, and many other facilities looking to proper sanitation, and to the protection of the health and safety of employees and to prevent over-crowding in the establishments named. It is not permissible or necessary to review all its provisions, but an outstanding one is the provision made for the observance and enforcement of the law through inspectors to be appointed by the cities and towns of the State. There is no intimation in the act, and we find none in the subsequent amendments thereto, of duty on the part of the inspector to survey conditions upon the farm or seek to apply and enforce the Factory Act in reference to conditions prevailing there. The statute has never been so construed to our knowledge by any executive or legislative authority. When the act was amended in 1919 by laws of that year shown at page 502, the particular section in question was given a title reading: "Machinery in factories to be guarded to protect employees." The law as then amended provided, *inter alia*, that if not possible to securely guard machinery "then notice of its danger shall be conspicuously posted in such establishments." Further amendments were made so that section 6786, Revised Statutes 1919, assumed the form in which it is quoted above and as it read at the time of plaintiff's injury. It is now section 13222, Revised Statutes 1919.

It is our opinion that the Legislature intended to and did create a reasonable classification of manufacturing, mechanical, and mercantile establishments, and that it intended to and did legislate in reference to industrial conditions prevailing in such establishments; and that the Legislature did not have in mind labor conditions upon the farm nor did it intend in any manner to legislate in reference to agricultural employment, nor did it view the farm, or any incidental endeavor, as a manufacturing or "other establishment." It had in mind the crowded factory, work shop, and mercantile establishment where numerous laborers were employed and where, under congested conditions, they were required to work about new and complicated mechanical apparatus. We cannot agree with

the contention of appellant that the statute applies to "all. places" where machinery is in use. While the statute must be given a broad and liberal construction to render its purpose effective, we cannot consent to an extension of the words "other establishments" to mean "all places." The statute must be given a reasonable con- struction and its effect restricted within the circumference of its plain meaning and to the classification clearly designated. The legislative intent must be given effect.

There is a radical distinction between the vocations carried on in the several establishments referred to in the statute and the vocation of the farmer. The latter does not have or maintain an "establishment" in the sense in which that word is used in the statute. His place of business is his farm and his activities are co-extensive with its boundaries. Primarily he is called upon to till the soil, and to plow, plant, cultivate, and harvest crops; and to raise, feed, manage, and market livestock. The pursuit of agri- culture is a comprehensive vocation. In the exercise of good hus- bandry the modern farmer is led into many special activities and employs various pieces of machinery, but he cannot be said to have an "establishment" at every place where he uses a machine. Specific endeavors are merely collateral to his primary vocation. Incidental- ly he saws wood, shells corn, grinds feed, bales his hay and straw, fills the silo and mow. He uses the stock cutter, tractor, drill, mower, reaper, sheller, baler, grinder, ensilage cutter, milk separator, and many other pieces of mechanism in the classification of machinery. His activities are not confined to a fixed situs, but through necessity extend over the area of the ranch. He is in the meadow, field pasture, and woods; at the barn, bin, silo, and feed lot. A com- posite picture of place activity for a single day would often render him ubiquitous.

No one is more familiar with these things than the farm laborer. The machinery with which he works is of comparatively simple con- struction, and its uses, purposes, and dangers, if any, are well under- stood. They are as obvious to the employee as to the employer: The farm hand is cognizant of the various activities in which he is ex- pected to engage, and while at work it doubtless never occurs to him that he is employed in an establishment. Likely it has not occurred to any one else heretofore, and our Legislature, containing at all times among its membership a large contingent of rural representa- tives as well as urban members, well understood the marked dis- tinction between an industrial or mercantile enterprise and the pursuit of agriculture, and never intended or designed the Factory Act for application to the farm. Certain other laws indicate this distinction. The Workmen's Compensation Act, section 3303, Re- vised Statutes 1929, separates the farm laborer from industrial workers and expressly excludes "employments of farm labor." The

statute prescribing that eight hours shall constitute a day's work does not apply to farm labor. [Section 13205, Revised Statutes 1929.] And likewise, the statute designed to protect working children does not apply to agricultural labor. [Section 14084, Revised Statutes 1929.] There may be other instances. These indicate a legislative policy which recognizes the distinction existing in the condition of the farm laborer and the industrial employee.

A consideration of all the foregoing has led us to the conclusion which we have reached. The farm is not a manufacturing or "other establishment." The section of the statute in question does not require farm machinery to be guarded, and plaintiff has no cause of action based solely upon the statute. The demurrer to the petition was correctly ruled and the judgment should be affirmed. The Commissioner so recommends. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion by BOYER, C., is adopted as the opinion of the court. The judgment is affirmed. All concur, except *Trimble, P. J.,* absent.