**Gary P. AKERS, Deceased, et al., Respondents/Cross–Appellants,**

v.

**WARSON GARDEN APARTMENTS and Half Moon Village, Inc., et al., Appellants/Cross–Respondents.**

No. 80240.

Supreme Court of Missouri, En Banc.

Jan. 27, 1998.

Kim M. Parks, Evan and Dixon, St. Louis, for Appellants/Cross–Respondents.

Mariano V. Favazza, St. Louis, Francis X. Duda, Anderson & Gilbert, St. Louis, for Respondents/Cross–Appellants.

Ronald C. Gladney, Bartley, Goffstein, Bollato & Lange, L.L.C., Clayton, for amicus curiae.

## PER CURIAM.[1]

Warson Garden Apartments and Half Moon Village, Inc., (Employer) and its insurer, Lumbermens Mutual Insurance Company, appeal and the dependents of Gary P. Akers (Employee) cross-appeal from an award of the Labor and Industrial Relations Commission (Commission). Affirmed in part; reversed in part; remanded.

Employer rents apartments and townhouses in St. Louis County. Employee worked as a maintenance person for Employer. On October 23, 1992, Employee and Frank Caliendo, who also worked as a maintenance person for Employer, were working in one of Employer's townhouses. They were using E–Z Lacquer Thinner to help remove tile glue from the basement floor. Employee was standing in a pool of the lacquer thinner when Caliendo saw a blue flame suspended in the air in the doorway of the basement's utility room. Caliendo yelled to Employee, "It's a fire" and "run." Caliendo then started to run to the stairs and would later state, "I must have got one, maybe two steps on the stairs and it blew me halfway up the stairs." When Caliendo realized Employee was not behind him, he unsuccessfully attempted to retrieve a garden hose to put out the fire. Caliendo then went back into the townhouse and helped Employee get out of the building. According to one expert, a suspended vapor flash type fire occurred as a result of the lacquer thinner being poured in the basement and "vaporizing and migrating to the ignition source," a hot water heater. Employee was taken to the hospital and died the following day.

The three minor children of Employee (Claimants) filed a claim for workers' compensation benefits. After filing their claim, Claimants entered into a third-party settlement on their separate civil action.[2]

An administrative law judge (ALJ) conducted a hearing and: (1) found Employer's violation of two state statutes and five sections of the Occupational Safety and Health Act were the "efficient" cause of Employee's death; (2) found Claimants were entitled to only one fifteen percent increase of the compensation and death benefit under the provision of section 287.120.4[3]; (3) found Employer forfeited its right to subrogation of the increase in the compensation and death benefit awarded under section 287.120.4; (4) rejected Claimants' contention that Employer waived all of its subrogation rights because of the safety violations; and (5) awarded forty weeks of benefits under section 287.190.4 for disfigurement. The Commission modified portions of the ALJ's award and concluded that: (1) for purposes of the provision of section 287.120.4, requiring an increase in the compensation and death benefit, there was no causal connection between Employee's failure to be using a respirator, *see section 292.320*, and his death, but there was a causal connection between the violation of section 292.080 and Employee's death; (2) the ALJ properly determined that Claimants were entitled to only one fifteen percent increase of the compensation and death benefit under section 287.120.4; and (3) disfigurement benefits should not be awarded. The Commission also modified the ALJ's calculation of the increase required under section 287.120.4. Employer and its insurer appeal and Claimants cross-appeal.

Review is only on questions of law. The Court will modify, reverse, remand or set aside an award only if the Commission acted without or in excess of its powers, the award was procured by fraud, the facts found by the Commission do not support the award, or there was not sufficient competent evidence in the record to warrant the making of

---

1. The appeal in this case was originally decided by the Court of Appeals, Eastern District, in an opinion written by the Honorable William H. Crandall, Jr. Following transfer to this Court, the court of appeals opinion, as modified, is adopted as the opinion of this Court.

2. The parties state that the settlement was for $750,000 but the judgment approving the settlement shows a settlement of $800,000. The exact amount of the settlement does not alter the disposition of any issue.

3. All statutory references are to RSMo 1986 unless otherwise indicated.

the award. *Section 287.495; Thompson v. Delmar Gardens, Chesterfield,* 885 S.W.2d 780, 782 (Mo.App.1994). When reviewing the sufficiency of the evidence, the Court is limited to determining whether the Commission's award is supported by competent and substantial evidence on the whole record. *Searcy v. McDonnell Douglas Aircraft Co.,* 894 S.W.2d 173, 176 (Mo.App.1995). The evidence and inferences are reviewed in the light most favorable to the award, and the Commission's findings will be set aside only when they are clearly contrary to the overwhelming weight of the evidence. *Id.*

### *Fifteen Percent Increase of Benefit— Section 287.120.4*

■ Employer first argues that the Commission erred in increasing the compensation and death benefit under section 287.120.4.[4] This section provides:

> Where the injury is caused by the failure of the employer to comply with any statute in this state or any lawful order of the division or the commission, the compensation and death benefit provided for under this chapter shall be increased fifteen percent.

To be entitled to the fifteen percent increase under section 287.120.4, a claimant must demonstrate the existence of the statute or order, its violation, and a causal connection between the violation and the compensated injury. *State ex rel. River Cement Co. v. Pepple,* 585 S.W.2d 122, 125 (Mo.App.1979). The Commission found that a fifteen percent increase under section 287.120.4 was proper because Employer violated section 292.080 and there was a causal connection between the violation of this statute and Employee's death. Section 292.080 provides: "No explosive or inflammable compound shall be used in any establishment in this state where labor is employed, in such place or manner as to obstruct or render hazardous the egress of operatives in case of fire."

■ Employer asserts that section 292.080 is not applicable for the townhouse where Employee was working. The primary role of

the courts when construing statutes is to ascertain the intent of the legislature from the language used in the statute and, if possible, give effect to that intent. *Abrams v. Ohio Pacific Exp.,* 819 S.W.2d 338, 340 (Mo. banc 1991). In determining legislative intent, statutory words and phrases are given their plain and ordinary meaning, and this meaning is generally derived from the dictionary. *Id.* Where no ambiguity exists, there is no need to resort to rules of statutory construction. *Id.* However, if an ambiguity exists, one "compelling" rule of construction requires the courts to presume that the legislature did not intend to enact an absurd law and favors a construction that avoids unjust or unreasonable results. *Id.* at 341.

Employer contends that the townhouse was not an "establishment" as that term is defined; therefore, it cannot be found to have violated section 292.080. An "establishment" is defined as a place of business. *Black's Law Dictionary* 490 (5th ed.1979). The evidence established that Employer's business was leasing apartments and townhouses. Employer was engaged in a commercial activity and derived revenue from leasing townhouses. The townhouse where the accident occurred was a place of business of Employer and, therefore, an establishment for purposes of section 292.080.

■ Employer also contends that section 292.080 only applies to factories. In 1891, the legislature enacted several sections under chapter 292, including section 292.080. These sections have been referred to as the "so-called Factory Act." *Martin v. Star Cooler Corporation,* 484 S.W.2d 32, 35 (Mo.App. 1972); *Johnson v. Bear,* 225 Mo.App. 1097, 40 S.W.2d 481, 484 (1931). However, several sections provide language that shows the statutes are not applicable only to factories. Section 292.020 requires machinery to be properly guarded or notice posted "in all manufacturing, mechanical and other establishments in this state...." Section 292.050 refers to "every manufacturing, mechanical or mercantile or public buildings in this

---

4. For purposes of this appeal, we shall refer to Employer when discussing the arguments presented by Employer and its insurer. Claimants' and Employer's arguments shall be considered jointly according to the issues.

state. . . ." Several other sections enacted in 1891 are not limited to factories. *See, e.g., sections 292.060; 292.110; 292.130; 292.140.* Review of the relevant sections enacted in 1891 demonstrates the legislature did not intend to limit the "so-called Factory Act" to factories, and Employer's contention fails.

Employer's reliance on *Johnson*, where the court held that a farm was not an "other establishment" for purposes of section 292.020, is misplaced. In that case, the court recognized the unique nature of farming and that the worker's compensation act, RSMo 1929, excluded employment of farm labor. *Johnson*, 40 S.W.2d at 484–485. This analysis is not applicable to a townhouse.

▮ Employer next argues that section 292.080 was not violated because there is not sufficient evidence to show Employee's egress was made more difficult by the presence of lacquer thinner between him and the steps. Frank Caliendo testified that, when the fire started, Employee was standing in the lacquer thinner, and it was between Employee and the steps. He also testified there was not any lacquer thinner between him and the steps, and he was able to get to the first or second step of the stairs. An expert testified that based on his belief as to where the lacquer thinner was poured, Employee was in the "envelope" of the vapors, which had surrounded him. The expert also stated once the vapors from the lacquer thinner that surrounded Employee ignited, he had no chance to escape from the basement without substantial injury. There is sufficient and competent evidence to support the Commission's finding that the lacquer thinner was used in such a manner as to render hazardous the egress of Employee when the fire occurred.

▮ Employer next argues that the evidence fails to support a finding of a causal connection between a violation of section 292.080 and Employee's death. Employer asserts that regardless of any other injuries he suffered, Employee's death was caused by the initial "explosion." Employer states, "As long as [Employee] was in the basement when the fire occurred, he would have suffered the injuries severe enough to cause his death." Employer cites to the testimony of the expert who stated that Employee had no chance to escape without substantial injury once the vapors ignited.

Employee's autopsy report states that the cause of his death was massive pulmonary edema, which was a complication of his "extensive burns." The expert testified that the fire lasted about five seconds. This expert also stated if Employee had not been in the "envelope" of the vapors, he would not have suffered as significant an amount of injuries. This expert stated further that Employee and Caliendo were in the same line of egress. No thinner was located between Caliendo and the stairs, and he was able to reach the first or second step. The evidence is sufficient to find a causal connection between Employer's violation of section 292.080 and Employee's death. The Commission's finding that under section 287.120.4 the compensation and death benefit should be increased fifteen percent for Employer's violation of section 292.080 is supported by substantial and competent evidence.

▮ Claimants argue that under section 287.120.4 the compensation and death benefit should be increased fifteen percent for each statute violated by Employer. Claimants contend that because Employer violated eight safety laws, then under section 287.120.4 the compensation and death benefit should be increased 120 percent. We disagree.

As discussed, section 287.120.4 provides that benefits are increased fifteen percent for an employer's failure to comply with any statute or lawful order. But this section does not contain specific language providing for a fifteen percent increase for *each* statutory violation. According to Claimants, they are entitled to an increase of approximately $156,000. This demonstrates that increasing benefits by fifteen percent for each violation can result in a substantial increase in the compensation and death benefit. Absent specific statutory language, we do not find that the legislature would intend this result. In addition, section 287.120.5 provides for a fifteen percent reduction of benefits when an employee willfully fails to use safety devices or fails to obey an employer's safety rules.

If Claimants' argument were accepted, then, by analogy, employees or their dependents could have their benefits reduced fifteen percent for each violation. This could result in a total forfeiture of benefits. Again, we do not find that the legislature would intend such a result. The Commission did not err by concluding that the fifteen percent increase under section 287.120.4 could not be applied cumulatively for each violation.[5]

### Subrogation—Section 287.150

■ Claimants argue that Employer is not entitled to subrogation of the compensation benefits awarded. We disagree.

Claimants first contend that the Commission concluded that Employer has no rights of subrogation for compensation benefits. In his decision, the ALJ calculated the compensation and death benefit, in part, by using the birth date of the youngest claimant and assuming death benefits would be payable until he reached the age of twenty-one. The Commission found that the ALJ's prospective calculation of the compensation and death benefit based on the benefits that may have been payable for the youngest claimant was improper. The Commission stated that if the youngest claimant was a full-time student he could be entitled to benefits until age twenty-two, Claimants could all die before age eighteen, and Claimants could become active duty members of the armed forces or become physically or mentally incapacitated from wage earning. *See section 287.240.(4)(b).* The Commission found these possibilities made it impossible to determine the amount of benefits that would be paid. The Commission concluded that along with the increase in compensation owed from the date of Employee's death until the ALJ's award, the increase in compensation and death benefit under section 287.120.4 should be applied as the compensation became due. The Commission's decision refers to weekly compensation

payments of $172.71 and a fifteen percent increase beginning February 21, 1996, the date of the ALJ's award.[6]

Claimants suggest the Commission ordered Employer to continue to pay weekly death benefits and a fifteen percent increase; therefore, the Commission concluded that Employer has no subrogation rights for compensation benefits. In his decision, the ALJ specifically rejected Claimants' argument that due to its safety violations Employer waived all subrogation rights. The Commission modified the ALJ's award to the extent indicated in its decision. The Commission did not address Claimant's waiver argument and, therefore, adopted the ALJ's decision. The Commission recalculated the amount of the increase in the compensation and death benefit because of certain errors by the ALJ.[7] This recalculation does not reflect that the Commission was modifying the ALJ's decision regarding Claimants' argument of waiver.

Claimants next contend that it is inequitable for Employer to be entitled to subrogate the compensation awarded because it violated Missouri safety statutes. Section 287.150 governs subrogation rights of employers. This section has no provision that an Employer forfeits it subrogation rights because of its fault or specific violations of state safety statutes.

■ Missouri case law does not support Claimants' contention. An employer's negligence is not a factor in an action against a third party brought by an employer under the subrogation statute. *General Box Co. v. Missouri Utilities Co.,* 331 Mo. 845, 55 S.W.2d 442, 449 (1932). In *General Box,* the dependents of an employee who died from injuries arising out of and in the course of employment were awarded compensation benefits. *Id.* at 443. Under Missouri's then

---

5. Because only one fifteen percent increase may be assessed, we need not address Claimants' arguments that there was sufficient evidence of causation under section 292.320 to award an increased compensation and death benefit and that violations of the Occupational Safety and Health Act give rise to increased awards under section 287.120.4.

6. The Commission issued an amended decision recalculating the amount of benefits owed from the time of Employee's death until the ALJ's award because of a mathematical error.

7. We reject Claimants' contention that the ALJ rather than the Commission properly calculated the amount of the increase in the compensation and death benefit.

subrogation statute, section 3309, RSMo 1929, the employer brought a wrongful death action against a third party, electric company, alleging the company's negligence caused the employee's death. The company pleaded as an affirmative defense that the employer's negligence was the cause of the employee's death. *Id.* at 444. The Court held that the subrogation statute made no exception for the subrogation rights of the employer to recover against a negligent third party based on any negligence of the suing employer concurring with or contributing to the third party's negligence. *Id.* at 445. The Court stated that the "sole test" of a third party's liability to the subrogated employer is the liability of the third party to the injured employee or dependents, and it was no defense for the third party to show that the employer was concurrently and contributorily negligent. *Id.*

In a later case involving an employee's action against a third party, the Court considered the third party's argument that it was improper to permit the employee to recover for the concurrent negligence of the third party and the employer, because it would permit the employer to profit by its own negligence. *Liddle v. Collins Construction Company*, 283 S.W.2d 474, 478 (Mo. 1955). Relying on *General Box*, the Court rejected this argument. *Id.* Furthermore, it has been held that without a specific indemnity agreement, "an employer is not liable to the non-employer defendant for any sums that the latter might be responsible for in tort to the injured plaintiff-employee." *Martin v. Fulton Iron Works Co.*, 640 S.W.2d 491, 496 (Mo.App.1982).

These cases notwithstanding, Claimants argue other jurisdictions have decided that an employer's negligence is a factor to be considered in determining the employer's subrogation rights. *Roe v. Workmen's Compensation Appeals Board*, 12 Cal.3d 884, 117 Cal.Rptr. 683, 528 P.2d 771, 774–776 (Ca. 1974); *Liberty Mutual Insurance Company v. Adams*, 91 Idaho 151, 417 P.2d 417, 421–423 (Id.1966). The decisions in these states are in the minority. *2B Arthur Larson & Lex K. Larson, The Law of Workmen's Compensation, sections 75.22, 75.23* (1996).

■ For the following reasons, we decline to adopt the minority rule. Missouri's workers' compensation statutes provide a no-fault system of compensation for workers. An employer subject to the statutes is liable to furnish compensation "irrespective of negligence" for an employee's personal injury or death arising out of and in the course of employment. *Section 287.120.1.* Accordingly, there may be instances where compensation is owed despite a lack of negligence by an employer. The purpose of the subrogation statute is to protect and benefit the employer liable for compensation, and the statute is designed to afford indemnity for compensation payable by the employer. *McCormack v. Stewart Enterprises, Inc.*, 916 S.W.2d 219, 224 (Mo.App.1995). The statute prevents an employee from receiving a double recovery, which has been referred to as an " 'evil to be avoided.' " *Id.* (citation omitted). In addition, an employer does not escape liability for violating state statutes. Section 287.120.4 provides for an increase in the compensation and death benefit when an employee's injury is caused by the failure of an employer to comply with a state statute. Finally, section 287.150 does not distinguish between an employer whose fault contributed to an employee's death or injury and an employer that was free of fault. If we were to adopt the minority rule, this would create a substantial exception to the subrogation statute, namely that an employer is only entitled to subrogation when it is free of fault. This is more properly a function of the legislature.

■ Claimants also contend that Missouri's adoption of comparative fault bars Employer's subrogation rights. The adoption of comparative fault "does not amend the statute governing the rights of the employer to recoup compensation payments from a third-party tort-feasor." *Rogers v. Home Indemnity Co.*, 851 S.W.2d 672, 676 (Mo.App.1993). In *Rogers*, the employee settled his negligence suit against a third party for $65,000, based on a total sum of $130,000, which was reduced fifty percent because of the employee's stipulated percentage of fault. *Id.* at 673. The trial court calculated the employer's insurer's subrogation interest as

$23,752.97 using the formula set out in *Ruediger v. Kallmeyer Brothers Service*, 501 S.W.2d 56, 59 (Mo. banc 1973). *Id.* at 674. The employee argued that in light of the adoption of comparative fault the insurer's interest of $23,752.97 should be reduced fifty percent, the amount of proportionate fault assessed to the employee. *Id.* In rejecting this argument, the Court held that under the subrogation statute an employer is entitled to reimbursement for amounts paid to an employee for workers' compensation benefits from any recovery against a third-party tortfeasor and that comparative fault played no part in the amount due the employer. *Id.* at 676. The Court did note that the employer was not at fault. *Id.* at 673. However, this does not alter the analysis. As held in *Rogers,* the adoption of comparative fault does not amend the subrogation statute.[8] In addition, Missouri's adoption of comparative fault has not altered the rule regarding a third party's action against an employer for contribution. *Sweet v. Herman Bros., Inc.,* 688 S.W.2d 31, 32–33 (Mo.App.1985); *See Redford v. R.A.F. Corp.,* 615 F.Supp. 547, 548–549 (W.D.Mo.1985). Employer is entitled to subrogation of compensation benefits including medical expenses as determined by the Commission. *McCormack,* 916 S.W.2d at 226.

The Employer's right to subrogate as to the amount of the increase in the compensation and death benefit under section 287.120.4 is no different from the right to subrogate as to the amount of the other compensation awarded. As noted earlier, section 287.120.4 states that the "compensation and death benefit shall be increased." The statute makes no attempt to differentiate the part of the award calculated under other provisions of chapter 287 and the part of the award calculated under section 287.120.4.

Subrogation is governed by section 287.150. That section specifically provides:

[T]he employer shall be subrogated to the right of the employee or to the dependents and the recovery shall not be limited to the amount payable as compensation to such employee or dependents, but *such employer may recover any amount which such employee or [the] dependents would have been entitled to recover.* Any recovery by the employer against such third person, in excess of the compensation paid by the employer shall be paid forthwith.

(Emphasis added.)

This section likewise makes no distinction between the part of the compensation and death benefit computed under section 287.120.4 and the part of the compensation and death benefit computed under other provisions of chapter 287.

In light of the clear language of the statutes, the Commission was in error in determining that Employer forfeited its right to subrogation of the increased compensation and death benefit under section 287.120.4. This part of the Commission decision is reversed.

### *Disfigurement Benefits—Section 287.190.4*

■ Claimants argue the Commission erred by not awarding disfigurement benefits. Section 287.190.4 provides:

If an employee is seriously and permanently disfigured about the head, neck, hands or arms, the division or commission may allow such additional sum for the compensation on account thereof as it may deem just, but the sum shall not exceed forty weeks of compensation.

Section 287.190 provides for the compensation to be paid for and defines "permanent partial disability." Section 287.190.6 defines "permanent partial disability" as being permanent in nature and partial in degree. Employee died the day after the fire but his death does not affect Employer's liability to furnish compensation as provided in chapter 287. *Section 287.230.* However, there is no

---

**8.** In 1993, the legislature amended sections 287.150.1, 287.150.2 and 287.150.3 to take into consideration an employee's comparative fault for the employer's recovery and credit for future installments. These amendments do not reflect that the adoption of comparative fault now constitutes a bar to an employer's subrogation rights. *See generally Liberty Mut. Ins. Co. v. Garffie,* 939 S.W.2d 484, 485–486 (Mo.App.1997)(discussing amendment of section 287.150.3).

evidence that Employee's injuries were partial in degree and, therefore, that he was entitled to compensation for permanent partial disability. Accordingly, the Commission did not err by failing to award disfigurement benefits.

The award of the Commission is affirmed in part and reversed in part, and the cause is remanded to the Commission for proceedings not inconsistent with this opinion.

All concur.