**Dustin Ray DORRIS, Respondent,**

v.

**Samuel L. KOHL, Appellant.**

**No. WD 71600.**

Missouri Court of Appeals,
Western District.

Feb. 22, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 29, 2011.

Application for Transfer Denied
May 31, 2011.

Russell F. Watters, Bradley Hansmann, Ireme Marusic, and Patrick Bousquet, St. Louis, MO, for appellant.

Stephen K. Nordyke, Butler, MO, for respondent.

Before: JOSEPH M. ELLIS, P.J., and ALOK AHUJA and KAREN KING MITCHELL, JJ.

ALOK AHUJA, Judge.

Dustin Dorris lost several of the toes on his left foot in an accident in a feed mill owned by his employer Samuel Kohl. Dorris brought an action claiming negligence *per se*, based on Kohl's alleged violation of a provision of the "Factory Act," § 292.020.[1] A jury returned a verdict in favor of Kohl. The trial court set the verdict aside as against the weight of the evidence, and granted Dorris a new trial. Kohl appeals, arguing that the Factory Act is inapplicable to his feed mill, and that Dorris failed to make a submissible case even if the Factory Act applied. We affirm.

### Factual Background

Kohl owns a farm in Leeton, on which he raises cattle and grows grain for their feed. In January 2004, he purchased a mill and the adjoining Jugtown Food and Feed store in Calhoun. At the time, the store sold animal feed as well as general grocery items. Dorris began working for Kohl in approximately March 2004 as a cashier/clerk in the store. At the time the mill was managed by Dorris' father, Jeff Dorris. At his father's request, Dorris later began working in the mill also.

In the late summer of 2005, Jeff Dorris resigned as manager of the mill, and by September the mill was no longer grinding feed for public sale; instead, the mill was grinding feed exclusively for Kohl's own cattle. The store was also shut down at this time. Kohl did, however, continue to sell some seed, such as milo, to the general public out of the mill.

In early November 2005, Kohl asked Dorris to grind some grain for use on his farm. On November 9, Dorris arrived at

---

1. Statutory references are to the RSMo 2000, updated through the 2010 Cumulative Supplement, unless otherwise indicated.

the mill in the morning and turned on the auger. He realized the auger was clogged because, although he could hear the electric motor hum, the auger itself was not turning. Dorris called his father for assistance, and after his father arrived, the two men successfully unclogged the auger by scooping out the clogged grain.

Dorris then proceeded to reload the grain he had removed while unclogging the auger. He replaced a steel mesh guard, which he had removed while scooping out the grain, before beginning to reload the grain. This guard did not fully cover the auger. While shoveling the grain back into the auger, Dorris' left foot apparently slipped, and it became caught in the auger. As a result, Dorris lost several of his toes, has restricted mobility, and often experiences pain from simply walking.

Dorris' Amended Petition for Damages alleges claims against Kohl for negligence *per se* based upon a violation of the Factory Act, and for vicarious liability for the negligence of Jeff Dorris.[2] A central contested issue at trial was the presence and use of a full sheet metal guard (not the mesh guard) on the auger. Kohl suggested that the full guard had been in place, but was removed by Dorris when the auger clogged, and that Dorris had failed to replace it. Dorris' evidence was that the full guard was not on the auger, or even in the room with the auger, at the relevant time, and that he would have used the full guard while reloading the auger with grain if it had been available.

The jury returned a defense verdict. Dorris moved for a new trial. The trial court found that the Factory Act applied. The court concluded that Dorris had made a submissible case under the Act, and that the verdict for Kohl was against the weight of the evidence. It accordingly granted Dorris a new trial. This appeal follows. § 512.020(1).

## Standard of Review

■■■ "Rule 78.02 provides that a trial court may grant one new trial on the ground that the verdict is against the weight of the evidence." *Talley v. Swift Transp. Co.*, 320 S.W.3d 752, 754 (Mo.App. W.D.2010).

The circuit court has nearly unfettered discretion in deciding whether or not to grant a new trial on the ground that the verdict was against the weight of the evidence, "[a]nd its ruling upon that ground will not be disturbed, except in case of manifest abuse." As long as the plaintiff makes a submissible case, the court's grant of a new trial will generally not be disturbed. It is only where there is a complete absence of probative fact to support the jury's conclusion that this Court will decide that the plaintiff did not make a submissible case.

*Stehno v. Sprint Spectrum L.P.*, 186 S.W.3d 247, 250 (Mo. banc 2006) (citations omitted). "In reviewing the trial court's grant of a motion for a new trial, we view the evidence and all reasonable inferences therefrom in the light most favorable to the trial court's decision." *Talley*, 320 S.W.3d at 754. Despite this deferential standard of review, however, " '[c]onstruction of a statute is a question of law,' " which we review *de novo*. *Anderson ex rel. Anderson v. Ken Kauffman & Sons Excavating, L.L.C.*, 248 S.W.3d 101, 106 (Mo.App. W.D.2008) (quoting *Delta Air Lines, Inc. v. Dir. of Revenue*, 908 S.W.2d 353, 355 (Mo. banc 1995)).

---

2. Kohl's Answer asserts a single affirmative defense, alleging that Dorris' injuries were proximately caused by his own negligence.

## Analysis

Kohl raises two Points Relied On. In the first, he argues that the trial court erred in granting Dorris's Motion for New Trial because the Factory Act does not apply to the mill. In the second, Kohl contends that the court erred in granting a new trial because Dorris failed to present a submissible case.

## I.

The provision of the Factory Act on which Dorris relies provides in relevant part:

> The belting, shafting, machines, machinery, gearing and drums in all manufacturing, mechanical and other establishments in this state, when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties, shall be safely and securely guarded when possible; if not possible, then notice of its danger shall be conspicuously posted in such establishments.

§ 292.020.

Kohl argues that the Factory Act is inapplicable to the mill where Dorris was injured, because at the time of Dorris' injury the mill was used solely to grind feed for, and thereby support, Kohl's farming operations. We disagree.[3]

Eighty years ago, the Missouri Supreme Court stated that "[i]t is well settled that the [predecessor to § 292.020] is highly remedial and should be liberally construed to effectuate its true intent and meaning." *Stein v. Battenfeld Oil & Grease Co.*, 327 Mo. 804, 39 S.W.2d 345, 347 (1931); *see also, e.g., Loyd v. Ozark Elec. Co-op., Inc.*, 4 S.W.3d 579, 584 (Mo.App. S.D.1999) ("Case law has construed Section 292.020 broadly and liberally to provide coverage to employees."), *overruled on other grounds, Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. banc 2003).

Consistent with this principle, the Missouri Supreme Court has held that the term "establishment" in the Factory Act refers generally to a "place of business" where the defendant engages in commercial activity from which it derives revenue; the Court specifically rejected the defendant's suggestion that the Factory Act "only applies to factories." *Akers v. Warson Garden Apartments*, 961 S.W.2d 50, 53–54 (Mo. banc 1998) (other citations omitted), *overruled on other grounds, Hampton*, 121 S.W.3d 220. Later decisions have specifically held that the term "other establishments" in § 292.020 refers broadly to any place in which workers are exposed to the dangers of unguarded machinery:

> "Section 292.020 requires machinery to be properly guarded or notice posted 'in all manufacturing, mechanical and other establishments in this state.'" The term "machine" in conjunction with section 292.020 has "'often been held to include every mechanical device or combination of mechanical power and devises to perform some function or to produce a certain effect or result.'" "'A mechanical establishment is broad enough, we think, to cover almost any plant or place where machinery is set up and operated.'"

*Pavia v. Smitty's Supermarket*, 118 S.W.3d 228, 244 (Mo.App. S.D.2003) (citations omitted). In *Loyd*, 4 S.W.3d 579, on which *Pavia* heavily relied, the Court emphasized that the phrase "other establishments" was meant to bring "a variety of businesses" within § 292.020, and that in

---

**3.** Kohl makes no argument that a violation of § 292.020 cannot serve as the basis for a negligence *per se* claim, but instead argues only that the statute is inapplicable in this case because of the nature of the operations conducted at the mill.

earlier cases "courts had applied this statute to 'almost all classes of establishments where machinery is used.'" *Id.* at 585 (citation omitted). *Loyd* explained that the term "other establishments" "focuse[s] on the type of duties required of the employees": "If employees are required to work near unguarded machinery, . . . then the employer can be within the group of 'other establishments.'" *Id.*

Under this caselaw, Kohl's mill constituted an "other establishment" subject to § 292.020. The mill plainly constituted part of a commercial activity conducted by Kohl and his employees and contractors, whether the mill ground feed for sale to retail customers, or solely for use in Kohl's own cattle farming operation. Machinery was set up and operated at the mill as an integral part of Kohl's commercial enterprise, and—as Dorris' accident so vividly demonstrates—he was subjected to the dangers of unguarded or inadequately guarded machinery as an incident of his work at the mill.

In arguing that his mill is not subject to § 292.020, Kohl relies heavily on *Johnson v. Bear*, 225 Mo.App. 1097, 40 S.W.2d 481 (1931). However, contrary to Kohl's arguments, *Johnson* did not hold that all agriculture-related activities are exempt from § 292.020. Instead, *Johnson* held that "[t]he farm is not a manufacturing or 'other establishment'" within the meaning of § 292.020. *Id.* at 485; *see also id.* at 482 (stating that whether § 292.020's predeces-

sor "appl[ies] to the farm as well as to the factory" was "the question to be answered"). The Missouri Supreme Court more recently recognized that this was the scope of *Johnson*'s holding. *See Akers*, 961 S.W.2d at 54 (recognizing that *Johnson* "held that a farm was not an 'other establishment' for purposes of section 292.020").

*Johnson*'s holding—that a farm is not an "other establishment" subject to the Act—does not assist Kohl, however, for the simple reason that Dorris was not injured on a farm. He was injured at a mill located in the town of Calhoun, not on Kohl's farm in Leeton. While Dorris may have been engaged in what could generally be described as "agricultural pursuits," that is not the same thing as saying that he was working *on a farm* at the time of his injury.[4] *Johnson* is simply inapplicable here.[5]

*Johnson* is distinguishable on its facts in any event. Although *Johnson* does not describe in any detail the circumstances of the plaintiff's injury in that case, it appears that *Johnson* involved a piece of mobile equipment (an ensilage cutter) actually being employed in the field, and not at a fixed location. In describing work on the farm, the court emphasized that a farmer's "activities are not confined to a fixed situs, but through necessity extend over the area of the ranch," and that a farmer "cannot be said to have an 'establishment' at every place where he used a machine." *Johnson*, 40 S.W.2d at 485. *Johnson*'s concerns about applying

**4.** *Cf. Dost v. Pevely Dairy Co.*, 273 S.W.2d 242, 244 (Mo.1954) (recognizing that legislature's reference to "farm labor" in statutory exemption from workers' compensation law was more narrow than a reference to "agricultural labor").

**5.** We also note that, although the mill was being used to grind feed solely for use on Kohl's farm at the time of Dorris' injury, only a few months earlier the mill had ground feed for commercial sale through the adjoining

store. Kohl would apparently concede that the mill constituted an "other establishment" when it was grinding grain *for sale to others*. Yet there is no indication that the manner of operating the mill changed between the time of its use as part of a retail enterprise, and the time of its use solely to support Kohl's cattle farming operation. The coverage of § 292.020 cannot be made to depend on such fortuitous considerations.

§ 292.020 to transitory activities conducted at multiple temporary (and frequently outdoor) locations have no relevance here, where Dorris was injured by an auger placed at a fixed location in an enclosed building.[6]

Kohl's first Point is denied.

## II.

In his second Point, Kohl argues that, even if § 292.020 is otherwise applicable, Dorris failed to make a submissible case under it. As explained above, the circuit court is granted significant discretion in granting a new trial on the basis that the verdict was against the weight of the evidence, at least so long as the plaintiff made a submissible case by presenting probative evidence on each element of his claim. To prove a claim based on a violation of § 292.020, the plaintiff must show that the machine causing the injury was unguarded or inadequately guarded, that it was possible to adequately guard the machine without interfering with its operation, and that the failure to adequately guard the machine proximately caused the plaintiff's injuries. *See Kokesch v. Excelsior Powder Mfg. Co.*, 16 F.2d 574, 575 (8th Cir.1926); *Fulwider v. Trenton Gas, Light Power Co.*, 216 Mo. 582, 116 S.W. 508, 513 (1909).

Dorris presented substantial evidence on each of these elements. Regarding the first element, while there was undoubtedly a steel mesh guard in place on the auger, the evidence would permit a finding that the auger was inadequately guarded as long as the full factory guard was not in place, and even Kohl's testimony can be read as recognizing that the full guard *should have been* in place while the auger was operating.

As to the second element, Dorris testified that he could have reloaded the grain into the auger with the full guard in place, and would have done so if he had known that the full guard was available. Moreover, after the accident Kohl located and installed the full guard on the auger, indicating that it was possible to fully guard the auger without interfering with its operation. *Phillips v. Hamilton Brown Shoe Co.*, 178 Mo.App. 196, 165 S.W. 1183, 1188 (1914) (allowing evidence of post-accident remedial measures to show that machine could have been successfully guarded); *see generally Rader Family Ltd. P'ship, L.L.L.P. v. City of Columbia*, 307 S.W.3d 243, 248 (Mo.App. W.D.2010) (evidence of defendant's subsequent remedial measures generally admissible to show 'feasibility of precautionary measures, if controverted' (citation omitted)).

6. Given our disposition, we need not decide whether *Johnson* remains good law. While that decision may be entitled to *stare decisis* effect, we have reservations concerning its correctness, to the extent *Johnson* is read to wholly exempt activities on a farm from the Factory Act. Such a broad "farm exemption" has absolutely no textual basis in the language of § 292.020 itself. We also find it curious that, in recognizing a "farm exemption" under § 292.020, *Johnson* cites other statutes which contain *express* exemptions for farm-related activities. 40 S.W.2d at 485. One would think that the existence of the explicit exemptions in these other statutes would counsel *against* recognizing an unstated exemption under § 292.020. We also question *Johnson*'s reliance on the title of a still earlier version of § 292.020 to support limiting the statute to industrial activities. 40 S.W.2d at 484. The title of the section had been changed to remove this limitation before *Johnson* was decided, *see* § 13222, Rev. Stat. 1929, and section titles are generally held not to be relevant in interpreting Missouri statutes in any event. *See, e.g., Independence.— Nat'l Educ. Ass'n v. Independence. Sch. Dist.*, 223 S.W.3d 131, 138 n. 5 (Mo. banc 2007). Finally, as explained in the text, later decisions have made clear that § 292.020 is not limited to factories or traditional industrial activities, but applies more broadly.

■ Finally, with regard to the last element, Dorris testified that the full guard would have prevented his injury. The pictures in evidence would also have permitted the jury to draw this conclusion. Indeed, Kohl himself appears to have understood that the guard would have prevented Dorris' injury: when asked whether the full guard was in place when Dorris was injured, Kohl stated, *Obviously* it was off at the time of his injury.

Construing the evidence, and the inferences reasonably flowing from the evidence, in the light most favorable to Dorris, we conclude that he made a submissible case. It was therefore within the circuit court's discretion to grant Dorris a new trial based on that court's determination that the jury's verdict was against the weight of the evidence.

## Conclusion

The circuit court's judgment is affirmed, and the case is remanded for further proceedings consistent with this opinion.

All concur.